### In re Prasad CHALASANI, Debtor.

### STATE BANK OF INDIA, New York Branch, Plaintiff–Appellee,

v.

### Prasad CHALASANI, Defendant–Appellant,

### Allen Mendelsohn, Trustee,

### Society For Savings, Creditor–Appellee.

### No. 1189, Docket 95–5071.

United States Court of Appeals,
Second Circuit.

Argued March 14, 1996.

Decided Aug. 13, 1996.

Kenneth Cooperstein, Centerport, New York, for Defendant-Appellant Prasad Chalasani.

Richard S. Last, New York City (Opton Handler Gottlieb Feiler & Katz, LLP, of counsel), for Plaintiff–Appellee State Bank of India.

Aaron R. Cahn, New York City (Olshan Grundman Frome & Rosenzweig, of counsel), for Creditor–Appellee Society for Savings.

Before: CARDAMONE, WALKER, and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

This bankruptcy appeal poses two questions. The first—when a defendant in an adversary proceeding may undo a default judgment—is readily resolvable; the second—whether another interested creditor may enter an action seeking a denial of discharge under 11 U.S.C. § 727 and prosecute that claim itself, where the plaintiff has voluntarily dismissed the complaint—requires more analysis.

We set forth briefly what occurred. In order to justify reopening and amending a judgment that had discharged a Chapter 7 debtor and to provide § 727 relief to all creditors, the bankruptcy court made two assumptions, neither of which was in fact true. The bankruptcy court assumed that a plaintiff bank, which had already obtained a judgment granting it § 523 relief against the debtor, was a trustee for all other creditors for the purpose of obtaining § 727 relief. It also assumed that another bank benefitted from a transfer of interest and could be substituted for the plaintiff bank in the now-closed bankruptcy.

A legal fiction assumes as fact, for purposes of justice, that which does not exist. *Black's Law Dictionary* 751 (rev. 4th ed.1968). We need not condemn the bankruptcy court's action out of hand as adopting improbable fictions because the use of legal fictions has an ancient lineage. In the sixteenth century, for example, the English common law courts asserted jurisdiction over mercantile transactions that occurred abroad by fictiously describing the place where the transaction took place as "being in the parish of St. Mary–le–Bow in the ward of Cheap." The allegation was not traversable. *See* Theodore F.T. Plucknett, *A Concise History of the Common Law* 593 (2d ed.1936). Nor do we disapprove the trial court's action because it was obliged to rely on two—instead of simply one—legal fictions to justify its

decision. Our condemnation of the use of legal fictions here—despite the established pedigree of one of them—is that this action effectively nullified one of the principal purposes of the Bankruptcy Code: allowing the debtor to begin a new life free from debt, *see Bank of Pennsylvania v. Adlman (In Re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976).

## BACKGROUND

### A. *Chalasani and the State Bank of India*

Dr. Prasad Chalasani (debtor or appellant) is a New York resident and the owner of various parcels of real property. In February 1986 he asked the New York branch of the State Bank of India (plaintiff or State Bank) for a short-term loan of $1.65 million to invest in the Sri Vishnu Cement Ltd. Company of Hyderabad, an enterprise he described as "the most profitable company ... in India." To persuade State Bank to make the loan, he provided it with a personal financial statement representing his net worth as roughly $5.5 million.

Based on the financial statement, State Bank extended appellant a credit line of $500,000 "[f]or meeting the working capital requirements for real estate and other commercial operations." He was required to guarantee the $500,000 loan personally and to pledge 2,272 shares in Hempstead Gardens Owners Corp. (Hempstead Gardens), which operated the Country Club Estate, a cooperative complex in West Hempstead, New York. These shares were then held by 125 Gardens Corp., an entity controlled (like Hempstead Gardens) by the debtor. On December 26, 1986 Chalasani agreed to these terms and entered into a credit arrangement with plaintiff. In a separate pledge agreement executed the same day, he transferred to State Bank the 2,272 shares and original proprietary leases for ten cooperative apartments. Later, in June and August 1987, plaintiff perfected its lien on the debtor's property through possession of the Hempstead Garden stock certificates and by filing a UCC–1 financing statement with both the New York Secretary of State and the Nassau County Clerk.

On October 9, 1987 State Bank raised Chalasani's line of credit to $1 million, in return for which he executed additional guarantees and 125 Gardens pledged additional shares of stock in Hempstead Gardens. State Bank's lien now extended to 5,394 shares in Hempstead Gardens and covered 25 apartments. The original stock certificates and proprietary leases were delivered to it, and its security interest was again perfected.

Plaintiff also advanced loans to two other entities in which Chalasani had a financial interest. On February 22, 1988 it lent $150,000 (later increased to $250,000) to Abimex Holding, Inc. (Abimex), and on July 1, 1988, it loaned $350,000 to CBD Mechanical Components Manufacturing, Inc. (CBD). Chalasani personally guaranteed both loans.

The debtor later sought plaintiff's permission to release its security interest in two apartments in exchange for payment sufficient to cover the loss of its collateral. On November 9, 1988 and again on February 1, 1989 State Bank agreed and executed and filed the appropriate UCC–3 financing statements. After Chalasani sold those two apartments, it is alleged, he took additional steps to extinguish plaintiff's lien illegally. The UCC–3 releases prepared by State Bank were altered so that they appeared to discharge its entire lien rather than just its lien on the two apartments. Chalasani then proceeded to sell 12 of the remaining 23 apartments to third parties. He gave no notice of these sales to State Bank because, it is charged, he fraudulently issued new shares and leases to the purchasers. Chalasani denies these allegations.

In July 1989 the debtor defaulted. By December 31, 1990 the debtor owed plaintiff $856,000 in principal and $101,864 in interest, prompting plaintiff to sue him in New York State Supreme Court (New York County), an action which resulted in a judgment in favor of State Bank for $1,213,979.40 entered June 26, 1992. Earlier, plaintiff had won judgments against Chalasani enforcing his personal guarantees of the loans to Abimex and CBD.

## B. *Bankruptcy Filing and Adversary Proceeding*

On September 9, 1992 (petition date) Chalasani filed for bankruptcy protection pursuant to Chapter 7 of the Bankruptcy Code in the Eastern District of New York (Hall, B.J.). According to his Statement of Financial Affairs, 13 lawsuits were pending against him in New York and New Jersey on the petition date. His petition listed State Bank as a creditor of his personal guarantees of $957,953, $310,000, and $120,000 respectively, totalling $1,387,953. He also listed two claims against State Bank that he valued at $50,739,600 and claimed, in all, total assets of $101,592,100 and total liabilities of $8,008,956. *State Bank of India v. Chalasani (In Re Chalasani )*, 187 B.R. 67, 68 (Bankr.E.D.N.Y. 1995). The bankruptcy court scheduled the initial creditors' meeting for October 27, 1992, and set December 28, 1992 as the last day to oppose discharge.

On December 8, 1992 State Bank commenced an adversary proceeding against Chalasani, objecting to the dischargeability of the debt owed to it, pursuant to § 523(a)(2)(A) and (B) of the Code, and to the discharge of the debtor, pursuant to § 727(a)(3), (4), and (5). The complaint set forth five causes of action. The first count charged that the debtor obtained a loan from plaintiff by preparing a fraudulent personal financial statement that "grossly inflated" his assets, in violation of § 523(a)(2)(B); the second alleged that the debtor therefore received the loan under false pretenses, making the debt non-dischargeable pursuant to § 523(a)(2)(A).

State Bank claimed, third, that because the debtor's failure to keep accurate financial records prevented creditors from ascertaining his true financial condition, he should be denied discharge under § 727(a)(3), and, fourth, that his inability to explain his lack of assets also warranted denial of discharge under § 727(a)(5). Finally, fifth, plaintiff charged that by listing non-existent assets on his bankruptcy petition—such as a $50 million claim against State Bank—the debtor improperly inflated his actual assets, and should therefore be denied discharge under § 727(a)(4). Chalasani's motion to dismiss the complaint was denied, and he filed an answer on April 29, 1993 containing only general denials.

## C. *Default Judgment*

Less than a week after Chalasani filed his answer, on May 3, 1993, plaintiff sought discovery of his business records including tax returns, deeds, documents concerning personal property, account records, and financial statements submitted to other banks. Specifically, State Bank sought documents relating to the sale of the cooperative units at Hempstead Gardens that the debtor had earlier pledged as collateral and his records regarding the disposition of the proceeds of each loan received from plaintiff State Bank. Chalasani made no response to this notice.

On June 10, 1993 debtor's counsel moved to withdraw because of the debtor's unwillingness to comply with discovery and his failure to pay legal fees. Five days later, plaintiff moved to compel discovery. It also moved that the debtor's answer be stricken and a default judgment be entered against him if he failed within ten days to produce the requested documents. The bankruptcy court granted counsel's motion to withdraw and directed that if the debtor failed to comply with discovery, plaintiff could enter a default judgment.

Chalasani remained intransigent. On August 17, 1993 he forwarded a letter to State Bank explaining that he was enclosing all available tax returns for the years requested and that he "ha[d] no other documents that [he] could think of which [were] not covered by the [t]ax returns." State Bank described Chalasani's production of alleged copies of incomplete tax returns as "wholly insufficient" and stated the papers furnished did not begin to comply with the discovery notice. After the debtor was so advised, he did not communicate further with State Bank.

On September 29, 1993 the bankruptcy court entered a default judgment settled by the plaintiff for $1,725,203.20 with interest, the amount owed by the debtor as a result of State Bank's successful state court litigation. This debt was "deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and

(B)." On October 6, 1993 plaintiff mailed copies of the judgment to several other creditors and to Allen Mendelsohn, the Chapter 7 Trustee. The bankruptcy proceeding continued, and the debtor was discharged by an order entered November 19, 1993. The case was marked closed on January 20, 1994.

On February 8, 1994 after the final decree, Chalasani, represented by new counsel, moved to reopen the case and set aside the default judgment, urging that his failure to comply with discovery resulted from excusable neglect in that his records were unavailable because of vandalism and because his original lawyer had withdrawn. He added that he now had in his possession "a substantial amount of records" and promised to "produce each and every item in his possession." He also stated that were his motion to reopen granted he would set forth a meritorious defense to plaintiff's action that ended in a default judgment.

This motion was denied. Judge Hall ruled "[s]ubstantial prejudice would inure to the creditors" if the motion were granted, and that such would in effect condone the debtor's "ill-founded tactics." *Chalasani*, 187 B.R. at 71.

### D. *Chalasani and the Society for Savings*

About a year after borrowing money from plaintiff, Chalasani also took out a loan from First Equity Corporation, executing a promissory note for $500,000 in December 1987. The note was secured by a mortgage on Oakley Court, real property the debtor owned in Mill Neck, New York. On December 22, 1987 the mortgage was assigned to the Society for Savings (Society), which thereupon became a secured creditor. On the petition date, Chalasani owed Society at least $499,783.38 in principal, interest and other applicable charges. In his petition, the debtor acknowledged owing Society $565,000 and listed it as a holder of a mortgage on the Oakley Court property.

On October 6, 1993 Society was served with the notice of entry of judgment and an attached copy of the default judgment granted plaintiff. Society's attorney stated it did not receive the notice until early November 1993. Although Society's counsel thereafter

telephoned plaintiff's attorneys, it took no other action. On February 17, 1994—over four months from the date it acknowledged service of the notice of judgment—Society attempted to enter the proceeding. Admitting its delay was deliberate, Society explained that it had timed its motion to coincide with the debtor's motion to reopen the proceeding, which had occurred about a week earlier.

Society took the position that the September 29, 1993 default judgment did not dispose of State Bank's claim respecting the dischargeability of the debtor under § 727. Society contended that since a creditor objecting to discharge under § 727 does so "for the benefit of all creditors," plaintiff should not thereafter have discontinued its action, and it asked to be substituted for State Bank in the proceeding in order to seek amendment of the default judgment to provide for additional relief under § 727. Chalasani and State Bank opposed Society's motion. Nonetheless, the bankruptcy court accepted Society's argument and granted its motion to be substituted as plaintiff, reopened the default judgment, and amended it to include § 727 relief. *Chalasani*, 187 B.R. at 72.

Chalasani appealed both this decision and the decision denying his motion to reopen the proceeding and to set aside the default judgment to the United States District Court for the Eastern District of New York (Platt, J.), which affirmed substantially for the reasons set forth in Judge Hall's order. From that affirmance, the debtor appeals.

### DISCUSSION

■ Our review of an appeal that proceeds from the bankruptcy court to the district court is plenary and independent. We affirm factual findings unless clearly erroneous and review legal conclusions *de novo*. *Bethpage Fed. Credit Union v. Furio (In Re Furio)*, 77 F.3d 622, 624 (2d Cir.1996). We turn to the first of the two issues raised on this appeal.

### I The Default Judgment

■ Chalasani challenges the denial of his motion to reopen the bankruptcy case and vacate the default judgment entered against

him. To challenge a default judgment, the movant must first reopen the case in the court where the default was taken. If successful in reopening, he must then make the required showing for undoing a default judgment. Both are necessary to obtain relief.

The bankruptcy court did not make clear whether it denied Chalasani's motion based on a failure to show cause to reopen the proceedings or because of an inability to demonstrate that the default judgment should be set aside. It simply concluded that the debtor had had a sufficient opportunity to defend the action brought against him by the plaintiff and that granting his motion would prejudice creditors and condone his "ill founded tactics." *Chalasani,* 187 B.R. at 71.

### A. *Reopening The Proceeding*

■ Bankruptcy Rule (Bankr.R.) 5010 provides, in relevant part, that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." In turn, 11 U.S.C. § 350(b) simply states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." The Code does not define "cause."

■ Decisions by the bankruptcy court granting or denying a motion to reopen a default are not disturbed, absent an abuse of discretion. *Bartle v. Markson,* 357 F.2d 517, 523 (2d Cir.1966) (Friendly, J.). The reason is that such decisions invoke the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case. *See Citizens Bank & Trust Co. v. Case (In Re Case),* 937 F.2d 1014, 1018 (5th Cir.1991); *see also In Re McNeil,* 13 B.R. 743, 745 (Bankr.S.D.N.Y.1981).

■ The bankruptcy court found that Chalasani's failure to comply with discovery was caused not by excusable neglect, as he had asserted, but by his own intentional actions. Weighed also in the decision not to reopen was the prejudice State Bank would have suffered if the case were relitigated. The expense incurred in obtaining a default judgment may support a finding that reopening would prejudice a creditor. *See Hawkins v. Landmark Fin. Co. (In Re Hawkins),* 727 F.2d 324, 327 (4th Cir.1984). Further, if the decision not to reopen was bottomed on a finding that the default judgment could not be set aside, such is a permissible basis to deny relief, because reopening in that event would be meaningless. *See In Re Danley,* 14 B.R. 493, 494 (Bankr.D.N.M.1981). We cannot say that it was an abuse of discretion to deny the motion to reopen.

### B. *Vacating Default Judgment*

■ Had the case been reopened, Chalasani would still have needed to meet the standard for setting aside a default judgment. Motions to vacate default judgments, like motions to reopen, are addressed to the broad equitable discretion of the court where the default was taken and, because that court is in the best position to assess the credibility and motives of the moving party, we will not disturb its decision granting or denying relief unless the decision was clearly wrong. *Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir.1984); *Davis v. Musler,* 713 F.2d 907, 912 (2d Cir.1983).

Bankr.R. 7055 makes Fed.R.Civ.P. 55 applicable in adversary proceedings. Rule 55(c) states that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Chalasani cannot show good cause; nor can he make out the more rigorous showing required by Rule 60(b).

■ Good cause depends upon such factors as the willfulness of the default, the prejudice the adversary would incur were the default set aside, and the merits of the defense proffered. *See Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In Re Men's Sportswear, Inc.),* 834 F.2d 1134, 1138 (2d Cir. 1987). The bankruptcy court found the default willful and that setting it aside would prejudice State Bank.

We agree. The debtor's contention that his default was occasioned by excusable neglect because he was not represented by counsel during discovery is meritless. Chalasani's counsel withdrew in part because of the debtor's unwillingness to comply with

discovery. His attorney averred that he advised his client of the particular documents required to be produced and that the debtor refused to produce them. Counsel's withdrawal adds no support to the debtor's claim of excusable neglect.

Appellant also asks that the default judgment be vacated because he now has a number of relevant documents that will support a meritorious defense. We are unpersuaded by this argument. If Chalasani has now happened upon documents requested by State Bank nearly three years ago, it might strengthen his claim of a meritorious defense. But if the documents were in his hands all along, he should have produced them in June 1993. The proof points to the latter. In an August 1993 letter to State Bank he claimed he had no relevant documents other than his tax returns. The present opportunistic discovery of financial records simply strengthens the inference that his default was willful.

Moreover, it does not appear that appellant has a meritorious defense. His financial statements for the years 1986 through 1989 reveal an unexplained loss of $5,000,000 in the value of his equity in the Hempstead Gardens apartments. Yet, even if he did have a meritorious defense (a dubious proposition), the willfulness of his default and the prejudice to State Bank that would result from setting aside the judgment amply support the bankruptcy court's conclusion that good cause did not exist to provide the debtor with relief.

Chalasani may derive no comfort from Fed.R.Civ.P. 60(b), which allows relief from a judgment only upon several specified reasons: mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence that could not reasonably have been discovered previously; fraud; nullity of the judgment; satisfaction of the judgment; or other similar reasons. Among these, Chalasani can only reasonably allege excusable neglect, a contention we ruled on a moment ago.

As his last argument, the debtor declares that certain papers supporting his motion to set aside the default judgment were improperly excluded from the record before the bankruptcy court, and that this error should lead to reversal. First, at oral argument before the bankruptcy court, debtor's counsel appeared to admit that he consciously decided not to file these papers. Second, Chalasani's own affidavit, where he now claimed to have "a substantial amount of records," contributes nothing new.

In short, it was not an abuse of the bankruptcy court's discretion to deny appellant's motion to reopen the proceedings and to set aside the default judgment.

## II Substitution of Society

■ We pass to the second and more complex issue before us. Society, another secured creditor of Chalasani, successfully moved to be substituted as plaintiff in the adversary proceeding and to amend the judgment to provide for relief under 11 U.S.C. § 727. The initial complaint filed by State Bank sought relief under § 523 or, in the alternative, under § 727, but the default judgment against the debtor only provided for relief under § 523. To understand the significance of Society's motion, a brief comparison of these Bankruptcy Code provisions is required.

### A. *Sections 523 and 727 Compared*

Section 523(a), "Exceptions to discharge," provides, in relevant part, that "[a] discharge ... does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive...."

■ Section 523(a) specifically excepts certain kinds of debts from discharge. Because the Code allows discharge of nearly all debts in bankruptcy, exceptions to discharge are important. *See* 3 Lawrence P. King et al., Collier on Bankruptcy ¶ 523.02, at 523–10 to 11 (15th ed. 1996) (Collier on Bankruptcy). Section 523(a)(2)(A) prevents the bankrupt from using bankruptcy to avoid repaying money, or to retain the benefits of property or services, acquired through fraud. *See id.* ¶ 523.08[1], 523–44 to 45. Section 523(a)(2)(B) makes clear that debts incurred by using a false financial statement also are not dischargeable.

Here, State Bank alleged the debtor convinced it to extend (and then increase) a credit line through fraudulent means and by using false financial statements. The default judgment provided that "all the allegations of fact in plaintiff's said adversary complaint [were] deemed admitted and resolved in favor of plaintiff." As such, § 523 relief was appropriate, and the specific debts owed by Chalasani to State Bank were not discharged.

By way of contrast, § 727(a) states that discharge will be denied only under certain circumstances. It provides:

(a) The Court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities....

■ State Bank's complaint sought to deny discharge on three grounds. First, relying on § 727(a)(3), it pointed to the debtor's failure to maintain proper business records. It has long been law that the privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of its financial affairs. *In Re Underhill,* 82 F.2d 258, 260 (2d Cir.), *cert. denied,* 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936); *see also In Re Mascolo,* 505 F.2d 274, 278 (1st Cir.1974); 4 Collier on Bankruptcy ¶ 727.03, at 727–37. Second, referring to § 727(a)(4), State Bank urged that because the debtor knowingly made false statements or omissions in his petition, discharge should be denied. *See id.* ¶ 727.04, at 727–63. Third, it maintained that discharge should be denied under § 727(a)(5) where the debtor is unable to justify satisfactorily any unexplained deficiency of assets. *See id.* ¶ 727.08, at 727–74 to 75. If any of these § 727 provisions were violated, the debtor cannot be granted discharge of his debts and given a fresh start.

■ While § 523 simply bars discharge of specific debts incurred through fraud, § 727 is a blanket prohibition of a debtor's discharge, thereby protecting the debts owed to all creditors. As the default judgment provided for relief solely under § 523, only the debt owed to State Bank escaped discharge in bankruptcy, and the order discharging Chalasani extinguished all other creditors' claims. It is for this reason that Society sought substitution as plaintiff and amendment of the default judgment.

## B. *Rules Governing § 727 Relief*

Clearly, § 727 imposes an extreme penalty for wrongdoing. As such, we have held that it must be construed strictly against those who object to the debtor's discharge and "liberally in favor of the bankrupt." *See Adlman*, 541 F.2d at 1003 (applying analogous Bankruptcy Act provision). The Code also recognizes the drastic nature of § 727 by providing special procedural rules governing § 727 cases.

■ Bankr.R. 4004, entitled "Grant or Denial of Discharge," mandates that objections under § 727(a) be lodged within 60 days of the initial creditors' meeting, although a creditor may move, during the original 60–day period, for an extension. Bankr.R. 4004(a) and (b). This deadline is an inflexible and mandatory rule, one not subject to a court's discretion. In the context of Bankr.R. 4003(b), which requires that objections to a debtor's claim of exemptions be lodged within 30 days after the initial creditors' meeting is concluded, the Supreme Court has held that no exception to the 30–day deadline could be implied. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–45, 112 S.Ct. 1644, 1648–49, 118 L.Ed.2d 280 (1992). Even though deadlines may lead to harsh results in particular cases, their observance by the bankruptcy bar and their enforcement by courts lead to the salutary result of bringing finality to bankruptcy proceedings. *Id.* at 644, 112 S.Ct. at 1648; *see also Canganelli v. Lake County Indiana Dep't of Pub. Welfare (In Re Canganelli)*, 132 B.R. 369, 383 (Bankr.N.D.Ind.1991) (collecting cases stating that the time limit in Bankr.R. 4004 is strictly construed); *Austin Farm Ctr., Inc. v. Harrison (In Re Harrison)*, 71 B.R. 457, 459 (Bankr.D.Minn.1987) (equities in a discharge adversary proceeding provide no basis for ignoring 60–day limitations period).

■ The interest of finality, advanced by the deadline, furthers an important policy goal in bankruptcy law, that is, that a debtor should obtain a fresh start in life and an opportunity to move ahead free of financial distress as quickly as possible. *See Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970) (per curiam). After the deadline passes, it is too late for any party to object to discharge in an ongoing adversary proceeding or to seek to intervene to raise an objection to discharge in another proceeding. *See* 8 Collier on Bankruptcy ¶ 4004.03[3], at 4004–11. Hence, under § 727 an objection must be made within 60 days or not at all.

■ Special rules also govern the dismissal of complaints seeking denial of discharge. Bankr.R. 7041 governs the dismissal of complaints and incorporates Fed.R.Civ.P. 41, except that when a complaint asking that a discharge be denied is dismissed, notice must be given to the trustee, the United States trustee, and other persons as the court directs. Further, the bankruptcy court may condition discharge on such "terms and conditions" as it deems proper. Bankr.R. 7041. This rule allows the bankruptcy court to tailor its order of dismissal to ensure that the dismissal was not obtained improperly. It also allows the trustee and other creditors to oppose dismissal of the original complaint. Dismissals of complaints objecting to discharge "raise[ ] special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor." *See* Bankr.R. 7041 advisory committee's notes.

### C. *The Trustee Approach*

[18] Bankruptcy courts share the concern that there be no "taint of compromise" involved in the dismissal of a § 727 action. *See, e.g., Hage v. Joseph (In Re Joseph)*, 121 B.R. 679, 682 (Bankr.N.D.N.Y.1990). Because discharge is a statutory right undergirded by public policy considerations, it is not a proper subject for negotiation and the exchange of a *quid pro quo*. *In Re Moore*, 50 B.R. 661, 664 (Bankr.E.D.Tenn.1985). And, the dismissal of a complaint seeking § 727 relief often harms an entire class of creditors. *See Joseph*, 121 B.R. at 682; *see also In Re Margolin*, 135 B.R. 671, 673 (Bankr.D.Colo.1992); *ITT Fin. Servs. v. Corban (In Re Corban)*, 71 B.R. 327, 329 (Bankr. M.D.La.1987).

In response to this problem, several bankruptcy courts have held that when a creditor brings an adversary proceeding pursuant to

§ 727 it becomes like a trustee in that its complaint benefits all the creditors. *Joseph,* 121 B.R. at 682. This approach is founded on the premise that "[§] 727(a) is directed toward protecting the integrity of the bankruptcy system by denying discharge to debtors who engaged in objectionable conduct that is of a magnitude and effect broader and more pervasive than a fraud on ... a single creditor." *Harrison,* 71 B.R. at 459.

Recognizing this, some courts have tried to reconcile the public interest in not permitting fraudulent debtors to use the courts to escape the consequences of their actions and the public interest in encouraging the just, speedy, inexpensive, and final resolution of disputes. The tool used to effectuate such a reconciliation is to provide notice and the terms of settlement to all parties, and on occasion "to allow other creditors ... or the trustee to intervene or be substituted for the original complaining creditor in order to prosecute the § 727 complaint." *Margolin,* 135 B.R. at 673. In other words, these courts have held that creditors who did not institute a § 727 action within the 60–day limit may continue the timely-brought action opposing the debtor's discharge when the original plaintiff declines to go further. *Russo v. Nicolosi (In Re Nicolosi),* 86 B.R. 882, 889 (Bankr.W.D.La.1988); *see also Mazur v. Hirsch Shoe Co.,* 46 F.2d 973, 974 (5th Cir. 1931).

The procedural mechanisms used by creditors to accomplish this have varied. In some cases, courts have found substitution, pursuant to Fed.R.Civ.P. 25(c) (incorporated by Bankr.R. 7025), to be the appropriate procedure. *See, e.g., Joseph,* 121 B.R. at 683; *see also Ryan v. Thomas (In Re Thomas),* 178 B.R. 852, 853 (Bankr.W.D.Wash.1995) ("When a creditor no longer has an interest in pursuing the action, the [Chapter 7] trustee essentially becomes his successor."). Other courts have used Bankr.R. 7041 to make dismissal conditional on allowing another creditor to prosecute the initial complaint. *Bicoastal Corp. v. Bilzerian (In Re Bilzerian),* 164 B.R. 688, 691 (M.D.Fla.1994). Notably, no Court of Appeals has yet addressed the question of how the public interest in allowing discharge for only the honest debtor

can be furthered in a manner consistent with the 60–day time limit imposed by B.R. 4004(a) and the procedural forms allowed by the Bankruptcy Rules.

### D. *The Instant Case*

Here, the bankruptcy court held that because § 727 protects all creditors, State Bank had "an obligation to prosecute the claims in their entirety inclusive of the 727 relief." *Chalasani,* 187 B.R. at 71. The Chapter 7 trustee informed the bankruptcy court that absent State Bank's complaint, he might have initiated his own § 727 action, which the court explained was a consideration in its decision to reopen the judgment for amendment. *See id.* Believing that the trustee (and perhaps Society) would have filed objections under § 727 if State Bank had not, the bankruptcy court substituted Society as a plaintiff in the action and amended the default judgment to provide for § 727 relief. *Id.* at 71–72.

On appeal, Society defends that decision and relies heavily on the trustee approach delineated above. It declares that once an objection to discharge is filed, the bankruptcy process permits only honest debtors to obtain a fresh start and the court is obliged by policy considerations as well as by Rule 7041 not to dismiss the objecting complaint until other creditors have been given an opportunity to continue the case. Chalasani and State Bank urge reversal, focusing on the lengthy delay between the entry of judgment and the filing of Society's motion for substitution and amendment of the judgment.

Society's motion is time-barred. While the "trustee approach" may or may not be sensible in § 727 actions, it can have no application in the circumstances of the case at bar. First, substitution is not an appropriate procedural device for permitting Society to enter this litigation. Bankruptcy Rule 7025, entitled "Substitution of Parties," incorporates by reference Fed.R.Civ.P. 25. The bankruptcy court relied on Rule 25(c), "Transfer of Interest," when it allowed Society to be substituted for State Bank. Rule 25(c) provides, in relevant part:

In case of any transfer of interest, the action may be continued by or against the

original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. For Society to be substituted for State Bank, there must have been a transfer of interest from it to Society. Here there was none. Although granting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court, *see Federal Deposit Ins. Corp. v. Tisch,* 89 F.R.D. 446, 448 (E.D.N.Y.1981), such discretion may not be abused by allowing substitution in the absence of a transfer of interest.

 While Rule 25(c) "permits automatic continuation of a lawsuit against an original corporate party," *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,* 13 F.3d 69, 72 (3d Cir.1993), in the case at hand there is, of course, no proof of any transfer or assignment of a tangible interest from State Bank to Society. It could be argued, perhaps, that when State Bank made sure the debt owed it by Chalasani would not be discharged, it ceased to have an interest in pursuing § 727 relief, and that this interest was somehow then transferred to Society and the other creditors. We think this legal fiction too convoluted to be maintained. *See Bilzerian,* 164 B.R. at 690 (rejecting substitution in similar circumstances). While it cannot be gainsaid that we must construe these rules "to secure the just, speedy, and inexpensive determination of every case and proceeding," Bankr.R. 1001, we must also accord the rules their plain meaning, *see Business Guides, Inc. v. Chromatic Communications Enters.,* 498 U.S. 533, 540, 111 S.Ct. 922, 927–28, 112 L.Ed.2d 1140 (1991) (interpreting Federal Rules of Civil Procedure); *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989) (same). To allow substitution under Rule 25(c) in this case would allow a legal fiction to be used not for purposes of justice but to evade strict time limits designed to bring finality to a bankruptcy proceeding and discharge to a debtor.

Second, even were substitution procedurally appropriate, we would still reject it in this case. The initiation of an independent action for § 727 relief would have been time-barred in February 1994 when Society sought to prosecute that claim, which was apparently abandoned by State Bank nearly five months earlier. Setting the first meeting of the creditors for October 27, 1992 made December 28, 1992—60 days thereafter—the last day to oppose discharge. On December 8, 1992, State Bank timely filed its adversary complaint objecting to discharge. Once December 28, 1992 passed, no additional objections to discharge under § 727 could be lodged. After that date revocation of discharge was possible in the three instances listed in § 727(d), none of which apply in the instant case. Even § 727(d) may only be invoked within one year of discharge or, in some cases, the closing of the case. *See* § 727(e).

 Just as the mandated strict construction of the deadline bars the initiation of additional actions, so also the use of creative legal fictions—like intervention or substitution—in cases where they do not apply, to evade the time limits, may not be countenanced. Although Rule 25(c) states no time limit and is therefore "wholly permissive," 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1958, at 561 (2d ed.1986 and Supp. 1996), common sense argues against a discretionary substitution that facilitates an end-run around the 60–day time limit.

 Moreover, the special nature of § 727 relief may be recognized in a fashion consistent with the Bankruptcy Rules. Bankr.R. 7041 provides that a bankruptcy court may condition dismissal of § 727 claims and must also give notice to the trustee and to other creditors. In some cases, the dismissal of the complaint may fall within the initial 60–day period, and other parties are free to initiate their own actions. However, even after the 60–day period runs, the court may still condition dismissal on the approval of the trustee or other creditors or require, as a condition of dismissal, that the debtor allow another party to pursue a § 727 complaint that was timely filed.

 Bankr.R. 7041 provides that bankruptcy courts can insist that an objection under § 727 be dismissed with "terms and conditions" that it "deems proper." Thus, those courts may fashion case-appropriate

remedies. *See Bilzerian,* 164 B.R. at 691 (one condition may be to require that a complaint not be dismissed before other parties have opportunity to prosecute original complaint); *Mac Servs. of Baton Rouge, Inc. v. Short (In Re Short),* 60 B.R. 951, 953 (Bankr. M.D.La.1986) (same). Bankr.R. 7041 grants bankruptcy courts sufficient authority and flexibility to place conditions on dismissal adequate to prevent tainted compromises. *See, e.g., In Re Taylor,* 190 B.R. 413, 418 (Bankr.D.Colo.1995) (requiring an investigation by Chapter 7 trustee before allowing dismissal of § 727 claim).

But these remedies must be fashioned in the bankruptcy court judgment or very shortly thereafter. Pursuant to Fed.R.Civ.P. 59, made applicable by Bankr.R. 9023, a bankruptcy court may, on its own motion, *see Sun–Tek Indus. v. Kennedy Sky Lites, Inc.,* 848 F.2d 179, 181 (Fed.Cir.1988), *cert. denied,* 488 U.S. 1009, 109 S.Ct. 793, 102 L.Ed.2d 784 (1989); 6A James W. Moore et al., Moore's Federal Practice ¶ 59.12[4] (2d ed.1996) at 59–274 to 275 & n.3, amend the final judgment and add conditions after a creditor, having learned of the judgment only after it was entered, informs the court that it would have prosecuted the original denial-of-discharge complaint. In the instant case, Society and the Chapter 7 trustee were both informed as early as June 15, 1993 that default judgment might be entered. Neither acted to ensure that the default judgment would include § 727 relief. On September 9, 1993 the proposed default judgment was mailed to the Chapter 7 trustee, and that proposed judgment granted relief only under § 523(a)(2)(A)(B). The trustee took no action. The September 29, 1993 judgment was mailed to the Chapter 7 trustee and to Society. Again, the trustee did nothing; and it took Society nearly five months from when it received notice for it to file its motion for § 727 relief.

Under Bankr.R. 7041, the trustee, the United States trustee, or other persons with leave from the court (leave that Society, an interested creditor, doubtless could have obtained) could have acted so as to protect their interests. Earlier, within the 60–day deadline, any party in interest could have requested, pursuant to § 727(c)(2), that the court order the trustee to determine if a basis existed for a denial of discharge. Society took none of these steps. Instead, it sat back and watched the litigation unfold. To allow Society to wait some 14 months after the deadline for opposing discharge passed and then lodge its own objections to discharge would totally ignore the finality policy built into the 60–day deadline.

We decline to follow that path. While what is timely may not be defined with any precision, *see United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir.1994) (considering timeliness in the context of Fed.R.Civ.P. 24), waiting nearly five months after the entry of judgment before seeking the dramatic and extreme relief sought here is untimely under any definition. The judgment, insofar as it allowed Society to be substituted as a party plaintiff and insofar as it amended the default judgment to grant § 727 relief, is reversed.

### CONCLUSION

Accordingly, the judgment is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.