**ADVANCED MARKETING GROUP, INC., Plaintiff,**

v.

**BUSINESS PAYMENT SYSTEMS, LLC, Defendant.**

**No. 05 Civ. 9121(VM).**

United States District Court,
S.D. New York.

Aug. 16, 2010.

---

**143.** *Id.* at 129–30.

Nicholas Philip Giuliano, New York, NY, William Robert Bennett, Matthew Jason Cowan, Bennett, Giuliano, McDonnell & Perrone, LLP, New York, NY, for Plaintiff.

Daniel Faizakoff, Daniel B. Faizakoff, P.C., New York, NY, for Defendant.

*DECISION AND ORDER*

VICTOR MARRERO, District Judge.

Merchant Capital Portfolios, LLC ("Merchant Capital"), presently not a party to the instant litigation between plaintiff/counterclaim defendant Advanced Marketing Group, Inc. ("Advanced Marketing") and defendant/counterclaim plaintiff Business Payment Systems, LLC ("Business Payment"), brought this motion (the "Motion") pursuant to Rule 25(c) of the Federal Rules of Civil Procedure ("Rule 25(c)") seeking leave to substitute for Business Payment, a now defunct entity, as the named party to this action. The Motion further seeks leave under Rule 15 of the Federal Rules of Civil Procedure to allow Merchant Capital to amend Business Payment's answer to assert Merchant Capital's Immunity from any potential Business Payment liability owed to Advanced Marketing. If the Court allows it to substitute and amend, Merchant Capital has represented to the Court that it will seek to maintain Business Payment's counterclaims based on its purchase of assets previously-owned by the defunct company, yet assert non-liability against any judgment that Advanced Marketing may obtain against Business Payment in this same litigation.

## I. BACKGROUND[1]

Business Payment marketed credit card processing services to merchants who would accept payment via credit card ("Merchants"). Business Payment did not, however, provide the processing services it sold. Rather, a distinct company, National Processing Company, rendered those services. Thus, Business Payment was an independent sales organization ("ISO"), acting as a middle-man between National Processing Company and Merchants.

Although Business Payment marketed and sold services to Merchants, it did not enter into any written agreement with them. Instead, like a real estate agent who promotes a property for sale on behalf of a seller who

---

1. Except where otherwise noted, the facts below are taken from the pleadings in this matter, and the documents attached to them or incorporated by reference. (*See* Advanced Marketing's Complaint, dated October 24, 2 005; Business Pay- ment's Answer With Counterclaims, dated July 2, 2009; Advanced Marketing's Answer to Counterclaims, dated July 10, 2009.) No further citation to these sources will be made.

later signs a contract directly with a buyer, Business Payment would simply bring Merchants to National Processing Company's doorstep, where those two parties could enter into their own independent agreement. National Processing Company-would then pay a commission to Business Payment, analogous to the percentage of the sale price with which sellers compensate real estate agents, for the amount of revenues attributable to Merchants that Business Payment passed on to it.

But the layers of commission payments generated when a commuter fills her tank at the gas station and pays by credit card are not limited simply to firms like National Processing Company and ISOs. Other mouths fed off this fee chain. In its efforts to market and sell National Processing Company's services, Business Payment engaged the services of various parties who would act as sub-independent sales organizations ("sub-ISOs"). Business Payment would provide the sub-ISOs with a share of its percentage earned on transactions that the sub-ISO referred to Business Payment which, in turn, would forward the business to National Processing Company. Advanced Marketing was one such entity that trolled the marketplace to recruit Merchants for Business Payment pursuant to the terms of their contract.[2]

In 2005, Advanced Marketing and Business Payment turned on each other in what generally arose as a dispute over payments governed by the Sub–ISO Agreements. From the vantage point of the present, with this lawsuit approaching the five-year anniversary of the commencement of the litigation, it appears that the proceeding now before the Court may not even mark the beginning of the end, but bears the potential to augur the end of the beginning. Advanced Marketing sued Business Payment, which eventually counterclaimed against Advanced Marketing. Most recently, Business Payment experienced financial distress that led to its demise.

As Business Payment expired, its attorney moved to withdraw. (*See* Declaration of Counsel Matthew J. Cowan in Support of Motion for Default Judgment, dated Apr. 14, 2010, Ex. F.) On January 22, 2010, Magistrate Judge Frank Maas ordered a conference to discuss the motion and counsel for Business Payment and its principal appeared. After the conference, the court granted counsel's motion, noted that a corporation such as Business Payment could not appear pro se in federal court, and directed the company to have successor counsel file a notice of appearance by February 26, 2010. (*See id.* Ex. G.) At a subsequent conference held on March 2, 2010, no attorney had yet filed an appearance on behalf of Business Payment. On April 7, 2010, during a telephonic conference with the magistrate judge, Advanced Marketing made an oral application for a default against Business Payment, which had still not appeared. The court granted the application, allowing Advanced Marketing to file a motion for default judgment. (*See id.* Ex. H.) On April 14, 2010, Advanced Marketing filed its motion for default judgment.

Meanwhile, the plot thickened as Merchant Capital maneuvered toward the scraps and shell that remained of Business Payment. Before Business Payment's counsel moved to withdraw, as the company dipped deeper into debt and faced foreclosure from its secured lender, it had entered into an agreement, dated October 26, 2009, with Merchant Capital (the "Transfer Agreement"), transferring all of its assets to Merchant Capital in exchange for Merchant Capital's assumption of some of Business Payment's debt (though explicitly not including any debt potentially arising from this litigation). (*See* Declaration of Mitchell C. Shapiro and Accompanying Exhibits in Support of Mercant [sic] Capital Portfolio LLC's Motion ("Shapiro Decl."), dated April 14, 2010, Ex. G.) According to Merchant Capital, the Transfer Agreement provided it with the right to assert Business Payment's counterclaims in the instant ac-

---

**2.** Under a Marketing Agreement and Addendum signed by Advanced Marketing and Business Payment on June 7, 2001 and June 11, 2001, Business Payment engaged the services of Advanced Marketing to canvas the marketplace in search of potential merchants. On May 16, 2002, Advanced Marketing and Business Payment amended and modified the June 2001 agreement by executing a second and final Addendum to Contract (collectively, the "Sub–ISO Agreements").

tion, yet immunity from any potential Business Payment liability. (*See* Memorandum of Law in Support of Merchant Capital Portfolio LLC's Motion to Substitute for Defendant/Counterclaimant BPS and for Leave to Serve and File an Amended Answer With Counterclaims ("Merchant Capital Moving Br."), dated April 14, 2010, at 4 (*citing* Affirmation of MCP CEO Oleg Firer, dated Feb. 18, 2010 ("Firer Aff") ¶ 3.) Accordingly, Merchant Capital states that it "is now prepared to pursue [Business Payment's claims] upon substitution for [Business Payment] in the instant action pursuant to Rule 25(c)." (*Id.* at 4 (*citing* Firer Aff ¶ 3).)

Under the Motion, however, Merchant Capital does not simply aim to step into Business Payment's corpse in this litigation; rather it hopes that Business Payment, though defunct, still has enough teeth to enable Merchant Capital to prosecute the company's counterclaims on behalf of itself as the current owner of Business Payment assets while shielding itself off from liability for the claims asserted by Advanced Marketing that initiated this litigation. (*See* Order dated Mar. 22, 2010 ("As Mr. Shapiro conceded, by means of the substitution, Merchant [Capital] hopes to prosecute [Business Payment's] counterclaim, but not be liable for any amounts that [Business Payment] may owe the plaintiff, Advanced Marketing Group, Inc.").)

Merchant Capital asserts that it is entitled to do so because the Transfer Agreement "provided that Merchant Capital as assignee took assignment of Business Payment's assets only and not its liabilities." (Merchant Capital Moving Br. at 5 ("Accordingly, upon substitution, [Merchant Capital] seeks leave to amend the Answer with Counterclaims pursuant to Rule 15 to add an additional affirmative defense asserting that Merchant Capital is not liable for any of the claims asserted by Plaintiff in his action.").) Indeed, the Transfer Agreement contains language that appears to be directed at this litigation, stating that Business Payment will retain, and Merchant Capital will not assume, "any obligation or liability accruing, arising out of, or relating to any breach of any contract by [Business Payment] prior the

Effective Time." (Shapiro Decl. Ex. G § 1.03(c).) Merchant Capital acknowledges, however, that whether any recovery by Advanced Marketing against Business Payment could offset a possible award to Merchant Capital is an open question of fact and law. In short, Merchant Capital wants to have its—or rather Business Payment's—prey and eat it too, and applies to this Court to use its discretion under Rule 25(c) to permit it to do so. Advanced Marketing, on the other hand, opposes the Motion and moves for a default judgment, given Business Payment's failure to appear in this action subsequent to becoming a defunct company, selling its assets, and withdrawing its counsel.

## II.  *LEGAL ANALYSIS*

Rule 25 governs the substitution of parties when an interest is transferred. *See* Fed. R.Civ.P. 25(c) ("If an interest is transferred, the action *may* be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." (emphasis added)).

■ " 'Substitution of a successor in interest . . . under Rule 25(c) is generally within the sound discretion of the trial court.' " *Taberna Capital Mgmt., LLC v. Jaggi*, No. 08 Civ. 11355, 2010 WL 1424002, at *2 (S.D.N.Y. Apr. 9, 2010) (*citing Organic Cow, LLC v. Center for New Eng. Dairy Compact Research*, 335 F.3d 66, 71 (2d Cir.2003); *see also State Bank of India v. Chalasani*, 92 F.3d 1300, 1312 (2d Cir.1996) ("[G]ranting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court."); *Kaplan v. Lehrer*, 173 Fed.Appx. 934, 935 (2d Cir.2006) ("Nothing in Rule 25(a), however, gives another party a right to substitute . . . . Instead, the rule provides that 'the court *may* order substitution' of proper parties.") (emphasis in original) (*quoting Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) (noting the force of the use of "may" rather than "shall" in applying a previous version of a similar subsection of the rule)).

■ "The 'primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and simplify the action.'" *Taberna Capital*, 2010 WL 1424002, at *2 (*quoting Banyai v. Mazur*, No. 00 Civ. 9806, 2009 WL 3754198, at *3 (S.D.N.Y.2009) (collecting cases)); *Dollar Dry Dock Sav. Bank v. Hudson St. Dev. Assoc.*, No. 92 Civ. 3737, 1995 WL 412572, at *4 (S.D.N.Y. July 12, 1995). Here, the Court is persuaded that Merchant Capital's proposed substitution would do just the opposite: it would lengthen and complicate what is, at its core, a contractual dispute between two companies, one of which has defaulted. Business Payment is now defunct and failed to procure counsel prior to the magistrate judge's deadline. If the action continues between only the two parties in the litigation, the narrow set of remaining issues would rise to the surface immediately, and the case would come to a rapid close.

■ If, on the other hand, the Court in its discretion allows Merchant Capital to "substitute" for Business Payment to prosecute the defunct company's claims without subjecting itself to the non-operating company's potential liability to Advanced Marketing, the Court would potentially face several threshold issues,[3] including possible motion practice on whether: (1) the Transfer Agreement was a sham agreement, (2) the Transfer Agreement allows Merchant Capital to assert claims against Advanced Marketing, (3) Merchant Capital would be subject to an offset in recovery under certain circumstances, (4) Merchant Capital has standing to represent Business Payment, and (5) the full spectrum of more typical issues that float to the surface during pretrial litigation and beyond. Accordingly, the Court finds that Merchant Capital's purported "substitution" for Business Payment would serve only to add duration, costs, and complexity to an action commenced in 2005 between two independent entities. Granting the proposed substitution would prolong rather than bring the litigation nearer to its conclusion. Thus, the Court concludes that Merchant Capital may not substitute for Business Payment in the instant litigation.

Much of the briefing on the Motion is focused on the issue of whether Merchant Capital may maintain an action against Advanced Marketing arising out of its purported ownership of Business Payment's assets, while not subjecting itself to Business Payment's liabilities. The Court does not address that issue or the issue of whether offsets would be applicable to a potential Merchant Capital recovery should Advanced Marketing also obtain a judgment against Business Payment. The resolution of those issues, and their concomitant intricacies, does not change the Court's analysis and finding here; rather, it only strengthens the Court's conclusion that substitution would function to extend and further entangle the proceedings.

The Court further notes that Merchant Capital appears less interested in seeking to "substitute" for Business Payment than it does in entering the action on its own behalf to assert claims (behind protections) that it purchased at a point that was then nearing the end of this case between Advanced Marketing and Business Payment. Here, Merchant Capital seeks to intervene into the pending litigation as a "counterclaimant," only nominally taking the place of Business Payment. But, as admitted by Merchant Capital, it is not the successor in interest of Business Payment and possesses at least a degree of protection from any judgment imposed against Business Payment because it assumed the role of the successor in interest to Business Payment's assets only. If Merchant Capital seeks to assert rights under assets that it now allegedly owns because of the Transfer Agreement, it may seek to do so in a separate action, and not by extending and complicating the present suit.[4] Whether

---

**3.** Advanced Marketing has challenged the Transfer Agreement as a sham. (*See* Declaration of Counsel Matthew J. Cowan in Opposition to Merchant Capital Portfolio LLC's Motion, dated April 28, 2010, Ex. 3 at 7.) Magistrate Judge Maas has stated to Merchant Capital on the record that "[y]ou realize that description of the transaction is by itself giving me a migraine" (*id.* Ex. 3 at

11), and that "I think the one thing we all agree on is these are fairly complicated issues," (*id.* Ex. 3 at 6.).

**4.** Merchant Capital acknowledges its ability to proceed with any potential claims that it now owns via a new action. (*See* Merchant Capital Reply Br. at 14–15 (recognizing that if the Court

**360**

Merchant Capital may assert successfully an action against Advanced Marketing, and what assets and liabilities were and were not properly transferred under the Transfer Agreement, and what offsets would and would not apply to any potential judgment it procured against Advanced Marketing, are nuanced issues addressed more properly in its contemplated action against Advanced Marketing, and will not, under this Court's discretion, slow and entangle the resolution of this matter. Accordingly, the Court denies Merchant Capital's Motion, and grants Advanced Marketing's motion for default judgment against Business Payment.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 49) of non-party Merchant Capital Portfolios, LLC to substitute for defendant/counterclaimant Business Payment Systems, LLC ("Business Payment") and for leave to serve and file an amended complaint is DENIED; and it is further

**ORDERED** that the motion (Docket No. 45) of plaintiff Advanced Marketing Group, Inc. ("Advanced Marketing") for default judgment as to defendant Business Payment is GRANTED.

The Clerk of the Court is directed to terminate any pending motions and to close this case subject to its being reopened for the purposes of entering judgment on damages in the event Advanced Marketing submits by August 31, 2010, on notice given to Business Payment by authorized means, an application for an award of damages, which shall be accompanied by documentation establishing its entitlement to such judgment. Business Payment shall respond by September 10, 2010.

**SO ORDERED.**

---

were to strike Business Payment's answer and counterclaims because of its default, "such striking would be *without prejudice* to [Merchant Capital] ... [because Merchant Capital] could and would simply commence a new action as plaintiff and prosecute the counterclaims it rightfully acquired from [Business Payment]." (emphasis in original)); *id.* at 15 ("If [Advanced Marketing] is successful in convincing the Court that a default should be entered against [Business Payment] and that [Business Payment's] Answer with counterclaims should be stricken, [Merchant Capital] will merely commence a new action to prosecute such claims as previously stated.").)