IN RE: Peter NASCARELLA, Jr., Debtor.

Belmont Wine Exchange, LLC, Plaintiff,

v.

Peter Nascarella, Jr., Defendant.

No. 8:11–bk–18791–MGW

Adv. No. 8:11–ap–01394–MGW

United States Bankruptcy Court, M.D. Florida TAMPA DIVISION

May 10, 2013

Scott T. Lyon, Macfarlane Ferguson & McMullen PA, 625 Court Street, Suite 200, Clearwater, FL 33756, for Plaintiff, Belmont Wine Exchange, LLC.

Jawdet I. Rubaii, Jawdet I. Rubaii, PA, 1358 South Missouri Avenue, Clearwater, FL 33756, for Debtor, Peter Nascarella, Jr.

## ORDER ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON SECTION 727(A)(2) CLAIM

Michael G. Williamson, United States Bankruptcy Judge

THIS PROCEEDING came before the Court on December 4, 2012, at 9:30 a.m., on the Debtor's Motion for Summary Judgment and Belmont Wine Exchange, LLC's Cross–Motion for Summary Judgment.[1] Belmont obtained a state court judgment against the Debtor for breach of

contract, deceptive and unfair trade practices, and fraud in August 2009. Belmont filed this proceeding to object to the Debtor's discharge and have its state court judgment determined to be nondischargeable.[2]

Belmont alleged that the Debtor is not entitled to a discharge for two reasons. First, Belmont says the Debtor is not entitled to a discharge under section 727(a)(5) because he failed to explain what happened to the money that he allegedly defrauded from Belmont in 2007 (Count I).[3] Second, Belmont says the Debtor is not entitled to a discharge under section 727(a)(2) because he transferred assets (a home in Vermont and money in his checking account) to his wife within one year before the petition date.[4] The Debtor previously moved for summary judgment on Belmont's claim under section 727(a)(2).[5]

The Court granted summary judgment in favor of the Debtor to the extent Belmont's claim under section 727(a)(2) was based on the transfer of the home in Vermont.[6] It was undisputed that the home was held by the Debtor and his wife as tenants-by-the-entirety. So the transfer of the home to the Debtor's wife was not a transfer by the Debtor. That left the remainder of Belmont's claim under section 727(a)(2).

Belmont primarily bases the remainder of that claim on its allegation that the Debtor transferred $117,580.22 from his personal checking account to his wife's checking account between August 2007 (about six months before Belmont sued the Debtor in state court) and February 2011

---

1. Adv. Doc. Nos. 64 & 70.

2. Adv. Doc. No. 1.

3. *Id.* at ¶¶ 20–23.

4. *Id.* at ¶¶ 26 & 27.

5. Adv. Doc. No. 21. The claim under section 727(a)(5) was eventually dismissed by the Court. Adv. Doc. No. 77.

6. Adv. Doc. No. 44. The Court also granted summary judgment in favor of the Debtor on Belmont's claim under section 523(a)(2).

in an effort to hinder his creditors.[7] Of that amount, $100,160.81 was transferred to his wife's account after Belmont obtained the state court judgment against him.[8] Belmont says it is undisputed that the Debtor's wife did not provide any consideration in exchange for the $117,580.22 that he transferred to her.[9]

The Debtor, in response, says he and his wife historically used his wife's checking account to pay their bills and that the $117,580.22 was used to pay other creditors.[10] Belmont does not appear to dispute—in fact, it actually concedes—that the Debtor ultimately used the money to pay the couple's creditors. But Belmont argues that does not change the fact that the Debtor transferred the money to his wife's account in the first place to conceal it from Belmont. Belmont cites *In re Schafer*, a decision by the district court for the Northern District of California, for the proposition that a debtor is not entitled to a discharge where he opens up a new account with the actual intent to hinder one creditor even though he intends to facilitate paying other creditors.[11]

As the court in *In re Marra* recognized, however, section 727 does not necessarily dictate the stringent result in *Schafer*.[12] Some courts, for instance, have held that a discharge should be denied under section 727 only where "a debtor's actions are truly blameworthy in an equitable sense."[13] Others have held that the alleged wrongful act must be accompanied by a sufficiently "culpable intent."[14] The Eleventh Circuit, in *In re Miller*, affirmed a trial court's decision that the debtors lacked the requisite intent to defraud under section 727(a)(2) where the debtors transferred property in exchange for canceling an unsecured debt.[15]

In that case, the debtors owed Sarasohn just over $1 million. The debtors transferred nine parcels of property to Sarasohn in exchange for Sarasohn cancelling its unsecured debt. Equitable Bank, one of the debtors' creditors, pointed out that those properties were valued at approximately $1.7 million the debtors' financial statements.[16] And one of the debtors' business partners said he thought they were worth at least $1.4 million—$300,000 more than the transfer price. Based on that, the bank argued that the transfer of the properties to Sarasohn demonstrated an intent to defraud.[17]

After a bench trial on the bank's claim under section 727(a)(2), the bankruptcy court initially ruled that the debtors' lacked the requisite intent to defraud. That ruling, however, was reversed by the district court on appeal.[18] The Eleventh Circuit, in turn, reversed the district court and affirmed the bankruptcy court's ruling

7. Adv. Doc. No. 70 at ¶¶ 1–11.

8. *Id.* at ¶ 6(d).

9. *Id.* at ¶ 6(e).

10. Adv. Doc. No. 64–1.

11. Adv. Doc. No. 70 at 13 (citing *Locke v. Schafer (In re Schafer)*, 294 B.R. 126 (N.D. Cal. 2003)).

12. *Cadle Company v. Marra (In re Marra)*, 308 B.R. 628, 630 (D.Conn.2004).

13. *Panuska v. Johnson (In re Johnson)*, 80 B.R. 953, 960 (Bankr.D.Minn.1987).

14. *In re Adlman*, 541 F.2d 999, 1006 & n. 11 (2d Cir.1976).

15. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 306–07 (11th Cir.1994).

16. *Id.* at 307.

17. *Id.*

18. *Id.* at 304.

that the debtors lacked the requisite intent to defraud under section 727(a)(2).

In doing so, the Eleventh Circuit initially noted that the bank had the "considerable burden of demonstrating actual fraudulent intent." [19] Constructive fraud was not sufficient. According to the Court, the record reasonably demonstrated that the debtors lacked the requisite actual intent to defraud:

> [T]he record reasonably suggests that the [debtors'] motivation was to obtain funds to keep their businesses alive while satisfying their largest creditor, Sarasohn. A mere preferential transfer of this sort is not tantamount to a fraudulent transfer for the purposes of denying discharge.[20]

The facts of this case are similar to those in *Miller*. Here, like in *Miller*, there is no dispute that the Debtor transferred money to pay his existing, legitimate creditors. The only difference here is that the Debtor transferred the money to his wife first before paying their creditors. The Court concludes that fact alone is not sufficient to warrant a different outcome than in *Miller*.

And this case is distinguishable from *Schaefer* because—unlike in that case—the Debtor here never testified that he specifically intended to hinder or delay Belmont. The existence of that fact was crucial to the court's decision in *Schaefer*. And even putting that aside, the stringent result in *Schaefer* is not warranted here.

For starters, the record reflects that the Debtor had been transferring money to his wife's account to pay creditors before he even knew Belmont had a claim. Belmont

obtained its judgment against the Debtor in August 2009. It filed the lawsuit leading to that judgment in February 2008. Yet, according to Belmont's summary judgment motion, the Debtor was transferring money to his wife's account as early as August 2007. That is nearly 7 months before Belmont even sued the Debtor (and almost one month before Belmont even received the wine that eventually led to its judgment). Moreover, the Debtor only transferred $450 to his wife during the one year before the petition date.

The discharge under section 727 is "the heart of the fresh start provisions" of bankruptcy law.[21] That is why barring a debtor a discharge is an "extreme penalty." Section 727 "must be construed strictly against those who object to a debtor's discharge and 'liberally in favor of the bankrupt,'" [22] and the Court is required to grant a discharge under section 727 unless one of the enumerated grounds for denial are present. Here, the record is devoid of any actual intent to defraud by the Debtor. The mere transfer of money to his wife's account—consistent with his historical practice—is not sufficient by itself to warrant the extreme penalty of denial of a discharge. Accordingly, it is

**ORDERED** that the Debtor's summary judgment motion as to Belmont's claim under section 727(a)(2) is GRANTED. Belmont's cross-motion for summary judgment as to that same claim is DENIED.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on May 10, 2013.

**19.** *Id.* at 306.

**20.** *Id.* at 307.

**21.** H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), *reprinted in* App. Pt. 4(d)(i).

**22.** *In re Benevento,* 2012 WL 3475163, at *8 (Bankr.S.D.Fla.2012) (quoting *State Bank of India v. Chalasani (in re Chalasani),* 92 F.3d 1300, 1310 (2d Cir. 1996)).