**In re Jack Clifford McKISSACK, Jr., Debtor.**

**Peterson–Marone Construction, LLC., Plaintiff,**

**v.**

**Jack Clifford McKissack, Jr., Defendant.**

**In re Douglas Jude Stairs, Debtor.**

**BSB Leasing, Inc., Plaintiff,**

**v.**

**Douglas Jude Stairs a/k/a Douglas J. Stairs, Defendant.**

**Bankruptcy Nos. 03–29811– HRT, 02–28453 MER. Adversary Nos. 04–1122 HRT, 03–1135 HRT.**

United States Bankruptcy Court, D. Colorado.

Jan. 28, 2005.

Diana Terry, Denver, CO, for Plaintiff.

Ed G. Perlmutter, Denver, CO, James R. Nottingham, Banning, CA, for Defendant.

Kelly J. Sweeney, Denver, CO, for United States Trustee.

John M. Dudgeon, Lakewood, CO, for Plaintiff.

John Cimino, Denver, CO, for Defendant.

Virginia Dalton, Denver, CO, for Al Hoffman, Chapter 7 Trustee.

## ORDER REGARDING DISMISSAL OF ADVERSARY COMPLAINTS OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 727 PURSUANT TO FED. R. BANKR. P. 7041

HOWARD R. TALLMAN, Bankruptcy Judge.

### OVERVIEW

In Case No. 04–1122, this matter comes before the Court on the parties' Stipulated Motion to Dismiss with Prejudice; the U.S. Trustee's Objection to Motion to Approve Settlement Agreement; the United States Trustee's Motion to Intervene in Adversary Proceeding; and the associated briefs and memoranda.

In Case No. 03–1135, this matter comes before the Court on Plaintiff's Motion to Dismiss Adversary Proceeding; the U.S. Trustee's Objection to Motion to Approve Settlement Agreement; [Chapter 7] Trustee's Motion for Leave to Intervene as Plaintiff; and the briefs and memoranda filed in support or opposition to those pleadings.

Because similar issues and concerns have been raised in both of these unrelated cases, the Court has consolidated its consideration of these matters in a single or-

der. The two cases both raise the issue of the propriety of approving the settlement of an adversary complaint brought by a private creditor where: (1) the settlement proposes that a payment will be made to the creditor by or on behalf of the debtor; and (2) the settlement requires that the creditor dismiss its objection to discharge under § 727.[1] The Office of the United States Trustee [the "UST"] has objected to the approval of the settlement agreements in both cases and the Chapter 7 Trustee has objected in one of the cases. The Trustees also seek to intervene so they may continue to litigate the § 727 causes of action against the Debtors in an attempt to deny the Debtors' discharges.

For the reasons stated herein, the Court will not approve the proposed settlements and will not dismiss the pending Adversary Proceedings. Nor will the Court grant the Trustee's motions to intervene at this juncture.

In rather broad general terms, the UST points to case law that asserts that a private party who brings an objection to discharge under § 727 dons the mantle of a trustee acting as a fiduciary on behalf of all of the case creditors. *See, e.g., Bankruptcy Receivables Mgmt. v. de Armond (In re de Armond)*, 240 B.R. 51, 57 (Bankr. C.D.Cal.1999) ("A creditor who joins a § 727 claim with a § 523 claim wears two hats: a fiduciary hat for the § 727 claim, which is brought on behalf of all creditors, and an individual hat for the § 523 claim. In settling the litigation, the creditor may not disregard the fiduciary hat."). Therefore, any settlement which results in the dismissal of such discharge objection as a *quid pro quo* for a payment made for the exclusive benefit of the a single creditor is tantamount to allowing the debtor to purchase his discharge and is abhorrent to public policy. The plaintiff/creditors, of

course, take a rather more narrow view of their role in the scheme of things. They argue that the UST and case trustee should not be allowed to sit back and take no action in a case then pop up at the last minute, after the parties have struck their bargain, and derail the deal, especially where no other creditor has objected to the settlement.

The various provisions of § 727 generally withhold a debtor's discharge on account of the debtor's bad acts committed either pre-petition or post-petition. The denial of a debtor's discharge has an effect on each and every creditor in the case and the benefit of obtaining a denial of discharge accrues to each creditor. The private creditor who brings an action under § 727, intentionally or not, is pursuing a remedy which affects the interests of all creditors. *Butler v. Almengual (In re Almengual)*, 301 B.R. 902, 908 (Bankr.M.D.Fla.2003) ("Besides vindicating public policy, a successful section 727 action benefits all creditors because it preserves their ability to pursue their claims against the debtor post-petition.") (citing *Jacobson v. Robert Speece Properties, Inc. (In re Speece)*, 159 B.R. 314, 319–20 (Bankr.E.D.Cal.1993)). A single creditor should not be in a position to allow the debtor to purchase a discharge and reap the exclusive benefit of that transaction. *In re Bates*, 211 B.R. 338, 346 (Bankr.D.Minn.1997) ("A private creditor who commences a § 727 proceeding on behalf of the estate assumes a duty to act in the best interests of the general creditor body."). Indeed, how can payment to a single creditor wipe the slate clean with respect to behavior that justifies denial of discharge under § 727?

On the other hand, to describe or to treat such a creditor as a trustee stretches traditional notions of trust relationships

---

1. All section references herein are to title 11 U.S.C. unless otherwise noted.

beyond the breaking point. Trust relationships are typically created either by specific agreement of the parties or as a court-created remedy for one party's misbehavior. Statutes too may create a trust relationship in some cases. But, none of those circumstances appear in the cases where an individual private creditor brings an action under § 727. The focus of such creditor's efforts is customarily upon the advancement of its own particular interests. The case trustee and the UST's office are typically the parties who look out after the interests of the general body of creditors. The Court has at least some sympathy for the creditor who takes the initiative (and expense) of filing an action against a debtor, when neither the case trustee nor the UST have done so, only to have its efforts effectively blocked by the trustees or others who object on the basis that the complaining creditor is not properly protecting the remaining creditors who have not acted to advance their own interests.

Finally, the debtor's hopes of resolving his problems and receiving a discharge grow ever dimmer. Having sought to settle the litigation by making an agreed payment to the complaining creditor the Debtor now finds that a new adversary seeks to enter the case to keep the threatened loss of a discharge alive.

## FACTS RELATING TO THE PROPOSED SETTLEMENTS

*Peterson–Marone Construction, LLC., v. Jack Clifford McKissack, Jr.,*

*Adversary No. 04–1122 HRT*

1. On October 3, 2003, McKissack filed his voluntary petition under chapter 7 and the case was assigned case number 03–29811–HRT.

2. The relationship between the parties relates to McKissack's work as a subcontractor for the Peterson–Marone Construction, LLC, ["Peterson"] on a real estate development.

3. On February 17, 2004, Peterson filed an adversary action against McKissack alleging seven separate counts under § 727 only. No causes of action under § 523 were pled. The various counts allege causes of action for concealment of assets; false oaths; failure to turn over records to the chapter 7 trustee; failure to explain a substantial loss of assets; and insider transactions.

4. On March 15, 2004, Defendant filed a motion requesting an extension of time to file an answer. The motion was granted. Subsequently, five similar motions were filed and granted. The last such order granted an extension of time to answer until June 1, 2004. To date, no answer has been filed in the case because the because of the request for approval of the parties' settlement.

5. On June 1, 2004, the parties filed a stipulated settlement of the matter which calls for Peterson to dismiss this adversary proceeding and for McKissack to make a motion to the Court for dismissal of his bankruptcy case. McKissack is to pay Peterson $45,000.00 and agrees that he shall be barred from filing a new bankruptcy petition for six months.

6. Also on June 1, 2004, in accordance with the proposed settlement agreement, McKissack filed Debtor's Motion for Voluntary Dismissal of Chapter 7 Case in his main bankruptcy case.

7. On July 28, 2004, the United States Trustee filed his Motion to Intervene in Adversary Proceeding, wherein the UST seeks leave to con-

tinue prosecution of Peterson's § 727 action against McKissack.

*BSB Leasing, Inc. v. Douglas Jude Stairs,*

*Adversary No. 03–1135–HRT*

1. On November 13, 2002, Stairs filed his voluntary petition under chapter 7 and the case was assigned case number 02–28453–MER.

2. BSB Leasing, Inc., ["BSB"] alleges that Stairs concealed the whereabouts of certain leased equipment belonging to BSB and it received a pre-petition judgment against Stairs in the amount of $222, 226.49.

3. On February 13, 2003, BSB filed this adversary proceeding alleging causes of action under § 523 for larceny, breach of fiduciary duty and willful and malicious conduct. It also pled a cause of action under § 727 for insider transactions.

4. On March 23, 2003, Defendant filed an Answer to the Complaint.

5. On June 18, 2003, Stairs moved to voluntarily convert his case from chapter 7 to a case under chapter 13 and the motion was granted.

6. On July 30, 2003, the Court entered its order to hold this adversary proceeding in abeyance.

7. On January 8, 2004, the UST filed a motion seeking to reconvert the case back to a case under chapter 7 based on Stairs' ineligibility under § 109 to be a chapter 13 debtor.

8. On January 21, 2004, the UST's motion was granted and the case was converted back to a case under chapter 7 *nunc pro tunc* to June 18, 2003.

9. On March 31, 2004, the Court entered an order scheduling a status conference for May 5, 2004.

10. On May 4, 2003, the parties moved to dismiss the adversary proceeding in its entirety, including both § 523 and § 727 counts, because they have come to a settlement of a state court action to set aside the state court judgment. The parties assert that the settlement of the state court matter did not require dismissal of either the bankruptcy proceeding or the adversary matter. The Court's review shows:

    a. The state court settlement calls for payment of $71,000.00 to BSB.

    b. This amount has been paid and was funded by an exempt IRA and a loan secured by a truck owned jointly with a non-debtor spouse.

    c. The state court settlement included a stipulation for waiver of discharge with respect to the debts covered by the settlement.[2]

    d. All of the state court activity proceeded without any application to the bankruptcy court for lift of the automatic stay.

11. The chapter 7 case trustee originally did not object to dismissal of the § 727 action. Instead, he chose to file a separate adversary proceeding against Stairs' non-debtor spouse, seeking avoidance of a transfer of property to her. He originally believed the property he could recover in that action could be sold for enough to pay all creditors' claims in full. Subsequent investigation of the recovered property revealed that it is unlikely to

---

**2.** The Court questions whether this waiver provision in the state court settlement agreement is enforceable without this Court's approval of the waiver.

generate sufficient funds to pay creditors in full; and, as a consequence, the trustee withdrew his original statement and moved to intervene as a plaintiff in the § 727 action.

12. The stipulation of facts filed by the parties on Sept 15, 2004, states that both the UST and the chapter 7 trustee are willing to intervene in the § 727 action. BSB agrees to such intervention, but Stairs does not.

## DISCUSSION

The early case of *In re Levy*, 127 F.2d 62 (3rd Cir.1942), has set the tone for much subsequent discussion on the subject of the dismissal of complaints objecting to a debtor's discharge. In that case, the Third Circuit addressed an appeal from an order of the district court approving a compromise between the debtor and the creditors committee. Under that compromise, a third party agreed to pay $5,000.00 for the committee to drop a turnover proceeding and not to oppose discharge. The district court approved the agreement and revoked a previous order extending the discharge objection deadline for a different creditor. The appellate court reversed the lower court's approval of the settlement. It said

Any offer of that character is wholly illegal. The reason is plain. Discharge is not personal to the creditors. It is general to the public and particularly that part of it which constitutes the world of commerce. Persons with undesirable business ethics are not to be turned loose to prey on their fellow merchants. This general protection cannot be waived by particular creditors whose private greed outruns their community spirit.

*Id.* at 63.

Since the implementation of the Code, the case law regarding dismissal of objections to discharge, exemplified by the *Levy* decision, has been supplanted by FED. R. BANKR. P. 7041.[3] The rule allows dismissal of § 727 actions brought by trustees and private creditors alike as follows:

... a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

Under FED. R. BANKR. P. 7041, a plaintiff may dismiss a complaint objecting to discharge after giving, at minimum, the case trustee and the UST an opportunity to weigh in. In addition, the rule gives the bankruptcy judge the discretion, on a case by case basis, to require notice to additional parties in interest and also to place conditions upon such dismissal as may be appropriate under the circumstances of the individual case to protect the integrity of the bankruptcy system. *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1312–13 (2nd Cir.1996).

3. The advisory committee note states:
    Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rule or order have required the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection. By specifically authorizing the court to impose conditions in the order of dismissal this rule permits the continuation of this salutary practice.
    FED R. BANKR. P. 7041, Advisory Committee Note (1983).

What Rule 7041 does not do is to give guidance on what actions the UST and case trustee are entitled to take after receiving notice. Nor does it give direction on what the appropriate terms and conditions for dismissal are. As a consequence, the various courts have used their discretion to fashion answers to these questions.

### Dismissal of § 727 Actions in the Tenth Circuit

This Court does not write on a blank slate with respect to dismissals of § 727 actions under Rule 7041 in the this circuit. A few cases decided in this circuit, and mostly in this district, have addressed, to one degree or another, some of the issues raised by attempts to settle § 727 actions. Unfortunately, in this Court's view, the guidance provided by the cases from this circuit is not altogether consistent.

*In re Margolin,* 135 B.R. 671 (Bankr. D.Colo.1992), addressed a case where the creditor filed a complaint that contained causes of action under both §§ 523 and 727. After discovery, the creditor stated that it believed that its cause of action under § 523 was sound, but that its § 727 causes of action were not well founded. *Id.* at 672. On that basis, it agreed to a settlement with the defendant that would result in dismissal of the § 727 causes of action and a nondischargeable judgment of $97,501.36 in the § 523 cause of action. *Id.* at 672–73.

The *Margolin* case trustee objected to the proposed settlement with respect to dismissal of the § 727 causes of action. She objected on the basis that the judgment on the § 523 cause of action represented a *quid pro quo* in exchange for dismissal of the § 727 causes of action. *Id.* at 673. The court adopted the approach of 1) providing notice and full disclosure of the terms of the settlement to all parties in interest; and 2) allowing the trustee or other creditors to be substituted

for the original plaintiff to continue prosecution of the § 727 causes of action. *Id.* at 673 (citing *Russo v. Nicolosi (In re Nicolosi),* 86 B.R. 882 (Bankr.W.D.La.1988); *Mac Services of Baton Rouge, Inc. v. Short (In re Short),* 60 B.R. 951 (Bankr. M.D.La.1986); *Hage v. Joseph (In re Joseph),* 121 B.R. 679 (Bankr.N.D.N.Y.1990)). After full notice of the *Margolin* settlement, no other party objected. While the trustee did not want to see the case dismissed, she had no interest in prosecuting the matter herself. Because the trustee did not care to be substituted for the original plaintiff in the case, and no party objected, the court approved the settlement as proposed. *Id.*

*In re Taylor,* 190 B.R. 413 (Bankr. D.Colo.1995), involved an attempt to settle an action to revoke the debtor's discharge. An unscheduled creditor had caused the case to be reopened so that she could pursue her complaint under both §§ 523 and 727. The § 727 claim was for revocation of the discharge. Subsequently, the § 523 causes of action were dismissed by the court and only the § 727 claim remained. *Id.* at 514 n. 2. The debtor and the creditor moved for approval of a settlement that would have resulted in a payment of $5,000.00 to the objecting creditor in exchange for dismissal of the complaint. The *Taylor* court approved "the rationale and outcome of *Margolin.*" *Id.* at 418. Nonetheless, because the posture and circumstances differed substantially from *Margolin,* it denied approval of the settlement. The settlement proposal was premature because no other party had an opportunity to examine the case and move for substitution. Therefore, the court reappointed a trustee in the case and advised the parties that they would need to give full notice of the complaint and the proposed compromise to all creditors.

In the case of *Pennwell Printing Co. v. Stout (In re Stout)*, 262 B.R. 862 (Bankr. D.Colo.2001), the court squarely confronted a situation where a creditor brought causes of action solely under § 727 for denial of discharge and then moved for approval of a settlement providing for a cash payment to be made to it in exchange for dismissal of the complaint. The facts of that case directly implicate the core concerns with respect to trafficking in discharges. The court held that "such a settlement cannot be approved and cannot be 'deem[ed] proper' under Rule 7041." *Id.* at 864.

In *Stout*, the UST also moved to intervene and take over the § 727 litigation. That motion was also denied. The court viewed such intervention as an evasion of the strict deadlines for filing such actions embodied in Rule 4004. *Id.* at 865. In addition, it found no authority in the Code or the Rules to allow intervention in these circumstances. *Id.* at 864–65.

Subsequent to those bankruptcy court decisions, a panel of the Tenth Circuit Bankruptcy Appellate Panel addressed these issues in some detail. In *Bank One v. Kallstrom (In re Kallstrom)*, 298 B.R. 753 (10th Cir. BAP 2003), the B.A.P. affirmed the bankruptcy court's refusal to allow dismissal of a § 727 action where the full amount of money to be paid by the debtor under the settlement would have gone exclusively to the complaining creditor.

In the *Kallstrom* case, Bank One had brought a complaint exclusively under § 727[4] seeking to deny the debtors their discharge. The settlement which the parties proposed would have resulted in a stipulated nondischargeable judgment in the amount of $60,000.00 against the debtors in favor of Bank One with payment terms. It also provided for dismissal of the § 727 action. The bankruptcy court denied approval of the settlement. That court refused to approve settlement of a § 727 action unless the settlement could be found to be in the best interest of the estate, and any consideration in connection with the dismissal is paid to the estate for the benefit of all creditors. The settlement, as proposed, failed that test.

The B.A.P. affirmed. In its discussion, the court agreed with the *Chalasani* court that "the discharge 'is not a proper subject for negotiation and exchange of a *quid pro quo.*'" *Kallstrom*, 298 B.R. at 759 (quoting *Chalasani*, 92 F.3d at 1310). The B.A.P. flatly stated that "a debtor may not obtain a discharge by paying a creditor who has filed a § 727(a) complaint in exchange for dismissal of the complaint." *Id.* The court even noted that 18 U.S.C. §§ 152(5) and 152(6)[5] make it a bankruptcy crime under certain circumstances for a party to receive property from the debtor with the intent to defeat the provisions of

**4.** Even though Bank One characterized its complaint as one brought under both §§ 523 and 727, the B.A.P. found that the complaint failed to adequately inform the debtors that Bank One sought any relief other than denial of discharge under § 727.

**5.**

A person who—

. . .

(5) knowingly and fraudulently receives any material amount of property from a debtor after the filing of a case under title

11, with intent to defeat the provisions of title 11; [or]

(6) knowingly and fraudulently gives, offers, receives, or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof for acting or forbearing to act in any case under title 11;

. . .

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. §§ 152(5) & 152(6).

the Bankruptcy Code or to extract property, payment, or other advantage as a *quid pro quo* for acting or forbearing to act in a bankruptcy case. *Id.*

Against that background, the B.A.P. in *Kallstrom* noted that the policy of preventing the trafficking in discharges is embodied in Rule 7041. "This Rule plainly affords the bankruptcy court considerable discretion in determining whether a § 727(a) complaint should be dismissed at the request of a plaintiff, and if so under what terms and conditions." *Id.*

■ In this Court's view, the guidance coming from *Kallstrom* is somewhat mixed. The B.A.P.'s discussion conveys an impression that it is never appropriate to approve a settlement of a § 727 action where a monetary payment goes only to the single creditor plaintiff in the action. That is also the effect of the test used by the bankruptcy court in that case. On the other hand, the sole issue before the B.A.P. was whether the bankruptcy judge had abused his discretion in denying approval of the parties' settlement agreement. The B.A.P. was not called upon to determine whether *it may ever be* appropriate to dismiss a § 727 action where payment is made exclusively to the objecting creditor. It said as much in a footnote. *Id.* at 760 n. 31. In addition, as noted above, the *Kallstrom* court recognized that Rule 7041 gives substantial discretion to the bankruptcy judge to approve dismissals under appropriate circumstances. Thus, *Kallstrom* does not support the imposition of a *per se* rule [6] against such dismissals. Nor does this Court. If Rule 7041 were meant to impose an absolute

ban, it surely would have said so rather than giving the bankruptcy judge discretion to fashion the terms and conditions under which such a dismissal may be approved. Nonetheless, *Kallstrom* certainly suggests that it will be rare indeed for a dismissal of a § 727 action to not run afoul of public policy concerns where consideration flows solely to the objecting creditor.

### Intervention or Substitution

An issue raised in both the Stairs and McKissack cases is that of intervention or substitution. In the McKissack case, the UST seeks to intervene to continue prosecution of the § 727 action. In the Stairs case, it is the Chapter 7 Trustee that seeks such intervention. This is an issue that frequently arises when the original plaintiff desires to dismiss an action under § 727. The great weight of authority allows substitution to permit a new party to continue prosecution of the original § 727 action. *Ballard Furniture Co., Inc. v. Lindsey (In re Lindsey)*, 208 B.R. 169 (Bankr.E.D.Ark.1997) (denied creditor's motion to dismiss and case trustee was substituted as party plaintiff under Rule 7041); *Ryan v. Thomas (In re Thomas)*, 178 B.R. 852 (Bankr.W.D.Wash.1995) (allowed case trustee to substitute for original objecting creditor); *In re Margolin*, 135 B.R. 671 (Bankr.D.Colo.1992) (adopts policy of giving notice of proposed settlement providing for dismissal to all parties in interest and allowing other parties to substitute for original complaining creditor); *Hage v. Joseph (In re Joseph)*, 121 B.R. 679 (Bankr.N.D.N.Y.1990) (allowed substitution of one creditor for another under Rule 25 to continue prosecution of

---

**6.** At least one district court has vacated a bankruptcy court standing order that attempted to impose an outright ban on the approval of a settlement in any adversary matter containing a prayer for relief under § 727 which proposes to make a monetary distribution solely to the objecting creditor in the action. *In re Standing Order with Reasons Regarding Objections to the Discharge Under 11 U.S.C. § 727 and Purported Settlement of Actions*, 272 B.R. 917 (W.D.La.2001).

§ 727 action); *Russo v. Nicolosi (In re Nicolosi),* 86 B.R. 882 (Bankr.W.D.La. 1988) (other creditors allowed to substitute for original plaintiff to defend appeal in the court of appeals where original plaintiff sought approval of settlement providing for dismissal of § 727 action following bankruptcy court judgment in creditor's favor and affirmation of judgment by district court); *but see Pennwell Printing Co. v. Stout (In re Stout),* 262 B.R. 862, 864–65 (Bankr.D.Colo.2001) ("Rule 7041 makes no mention of allowing anyone to avoid these [Rule 4004(a) ] deadlines by intervention or substitution.").

Despite the fact that the cases almost universally embrace the concept of allowing a party in interest to substitute for a § 727 plaintiff who no longer desires to pursue its case, this Court finds no direct authority in the Code or the Rules for such substitution.[7]

*State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300 (2nd Cir.1996), is the only circuit court case to have addressed these issues. In that case an adversary complaint was filed alleging causes of action under both §§ 523 and 727. *Id.* at 1305. Because of the Defendant's refusal to cooperate with discovery, the bankruptcy court granted the plaintiff's motion for default judgment on the § 523 claims, *Id.* at 1305–1306, and copies of the default judgment were served on the case trustee and several other creditors. *Id.* at 1306. Four months later, the debtor retained new counsel who moved to reopen the case and vacate the default judgment. *Id.* At the same time, also four months after being served with a copy of the default judgment, Society for Savings, ["Society"] a secured creditor, moved to be substituted for the plaintiff in order to pursue the § 727 action in a reopened case. *Id.*

The *Chalasani* court affirmed the bankruptcy court's refusal to reopen the case and set aside the default judgment. The defendant's new-found spirit of cooperation was too-little-too-late. The court found no excusable neglect and no grounds under Rule 60 for revisiting the matter. *Id.* at 1307–1308.

The more complicated issue was whether to allow Society's application to be substituted for the original plaintiff in the § 727 action. *Id.* at 1308. The bankruptcy court had allowed the substitution, *Id.* at 1311, but the Court of Appeals reversed on that point. *Id.* at 1313. The bankruptcy court had used a "transfer of interest" rationale under Rule 25(c) to justify the substitution. *Id.* at 1311. But the Court of Appeals noted that there was no evidence of any tangible transfer of interest. It found the notion that, because the original plaintiff is a trustee for the remaining creditors, a transfer of that creditor's interest to those creditors occurs upon the plaintiff's abandonment of its action to be a "legal fiction too convoluted to be maintained." *Id.* at 1312. The court argued that a discretionary substitution under Rule 25 that allowed an "end run around the 60–day time limit" for objecting to discharge to be unacceptable. *Id.* The Court also noted that this did not merely represent substitution of one creditor for another in an ongoing case, but involved revocation under § 727(d) of a discharge that had already been issued. *Id.*

Even though, under the particular facts that it had before it, the *Chalasani* court

---

7. These motions are frequently styled as motions to intervene. But what they are typically seeking is the right to replace a plaintiff who is not longer interested in pursuing the case. As such, they should more properly be denominated as motions for substitution. The reported cases do not appear to be allowing a new party to intervene in the case where the original plaintiff also remains a party.

reversed the bankruptcy court on the substitution issue, it still conceded that

> the special nature of § 727 relief may be recognized in a fashion consistent with the Bankruptcy Rules. Bankr.R. 7041 provides that a bankruptcy court may condition dismissal of § 727 claims and must also give notice to the trustee and to other creditors.... [E]ven after the 60–day period runs, the court may still condition dismissal on the approval of the trustee or other creditors or require, as a condition of dismissal, that the debtor allow another party to pursue a § 727 complaint that was timely filed.

*Id.* at 1312. Thus, while it would not allow a creditor to reopen the case and substitute for the original plaintiff several months after the default judgment had entered and after a discharge had issued, the *Chalasani* court regarded Rule 7041 as providing a vehicle for the trustee or other parties to protect their interests if they seek substitution in a timely manner.[8] *Id.* at 1313. The court went on to cite, with apparent approval, other cases that approved substitution of a new plaintiff for one who wished to abandon its § 727 action. *Id.* (citing *Bicoastal Corp. v. Bilzerian (In re Bilzerian)*, 164 B.R. 688, 691 (Bankr.M.D.Fla.1994) ("it is self-evident that other parties in interest should be given an opportunity to prosecute a complaint objecting to debtor's discharge initially filed by another creditor if the original plaintiff elected ... not to pursue prosecution.") (reversed on other grounds 1995 WL 934184 (M.D.Fla.1995)); *Mac Serv., Inc. v. Short (In re Short)*, 60 B.R. 951, 953 (Bankr.M.D.La.1986) ("condition of full disclosure will provide all interested parties with the right to object to the dismissal and with the right to continue prosecution of the complaint to deny the Debtor's discharge if they wish to do so")).

The policy of allowing a creditor to substitute for an original plaintiff wishing to dismiss an objection to discharge also found expression in cases under the Bankruptcy Act. *See Mazur v. Hirsch Shoe Co.*, 46 F.2d 973, 974 (5th Cir.1931) ("[I]t is plain that the creditors may at any time while the cause is still pending, and before final action is taken on it, decline to go further with their opposition to a discharge, it is also true that in such event any other creditor may, in the discretion of the judge of the court, be allowed to proceed under the specifications already filed by those withdrawing."); *In re Ruhlman*, 279 F. 250, 252 (2nd Cir.1922) ("Creditors may be allowed, in the discretion of the court, to enforce objections filed and abandoned by other creditors.").

Although the cases which have addressed intervention and/or substitution have overwhelmingly approved of the practice, they are not uniform in their rationale. In *Ballard Furniture Co., Inc. v. Lindsey (In re Lindsey)*, 208 B.R. 169, 170 (Bankr.E.D.Ark.1997), the court relied on Rule 7041 to support its substitution of the case trustee for the original plaintiff. In *Jones v. Buzzeo (In re Buzzeo)*, 315 B.R. 243, 246 (Bankr.D.Conn.2004), the court found authority in Rule 7041 for allowing another creditor to substitute for the original plaintiff as a condition for dismissing that plaintiff from the adversary action. In *Ryan v. Thomas (In re Thomas)*, 178 B.R. 852, 853 (Bankr.W.D.Wash.1995), the court states that "[t]he legal justification for authorizing substitution is that a credi-

---

8. This Court is not convinced that Rule 7041 provides a basis for substitution. The plain language of the rule suggests that its application is limited to allowing a court to set terms and conditions for the *dismissal* of an objection to discharge. But substitution of a new plaintiff allows a court to reject a motion to dismiss in order to permit litigation of the claim to continue.

tor prosecutes a section 727 action as trustee, since the action inures to the benefit of all creditors. When a creditor no longer has an interest in pursuing the action, the trustee essentially becomes his successor." As previously discussed, in the case of *In re Margolin*, 135 B.R. 671 (Bankr.D.Colo. 1992), the court adopted the policy of requiring full disclosure of settlements terms and then providing an opportunity for another interested party to substitute for the original plaintiff. *Id.* at 673. The court did not cite any rule or statute as authority, but cited to other cases using that approach. In *Hage v. Joseph (In re Joseph)* the court said that

> [s]ubstitution, pursuant to Bankr.R. 7025, which incorporates Federal Rule of Civil Procedure ... 25 appears to be the appropriate procedure. Specifically, Fed.R.Civ.P. 25(c) allows for substitution of parties where a transfer of interest occurs during the course of the action. The substituted party does not bring his own complaint as an intervenor would, but instead 'steps into the shoes' of the original plaintiff and adopts the objections to discharge set forth in the originally filed complaint.

121 B.R. 679, 683 (Bankr.N.D.N.Y.1990).

The Court suspects that the source of this inconsistency is the absence of direct authority in the Code or the Rules for substitution of a new plaintiff for the original. In this Court's view, neither Fed.R.Civ.P. 24 or 25.[9] provide any basis for intervention or substitution in this context. Allowing intervention under Rule 24 is not appropriate in these cases because "[w]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party." *Alvarado v. J.C. Penney Co., Inc.*, 997 F.2d 803, 805 (10th Cir.1993) (quoting *Schneider v. Dumbarton Developers, Inc.*,

767 F.2d 1007, 1017 (D.C.Cir.1985)). Thus, intervention under Rule 24 allows the new party to do more than merely step into the shoes of a previous party. That is an important point. If the new party is allowed to come into the case and pursue claims different from the basis upon which the case was originally filed, then a party who did not choose to pursue those claims within the time period set by Rule 4004(a) may have an opportunity to pursue those new claims long after that party's filing deadline has expired. A Rule 24 intervenor could potentially defeat the strict deadline for filing objections to discharge as set out in Rule 4004(a). *See, e.g., Pennwell Printing Co. v. Stout (In re Stout)*, 262 B.R. 862, 864–65 (Bankr.D.Colo.2001).

Rule 25 specifies that a party may be substituted under four specific circumstances: (a) death; (b) incompetency; (c) transfer of interest; and (d) death or separation of a public officer from office. The desire of the original plaintiff to settle a § 727 matter does not fit comfortably within any of those contemplated categories. Certainly, on their face, subsections (a), (b) and (d) of Rule 25 are inapplicable. While the court in *In re Joseph* has used subsection (c), transfer of interest, to support its use of Rule 25 substitution, 121 B.R. at 683, that interpretation strains the traditional view of what constitutes a transfer of interest. In the circumstance of a § 727 plaintiff desiring to dismiss its § 727 claim, with or without a settlement of the action, no real transfer or assignment of an interest has taken place. The original plaintiff has an interest in the action based upon the fact that § 727 allows "[t]he trustee, a creditor, or the United States Trustee" to file an action objecting to discharge under § 727(a). 11 U.S.C. § 727(c)(1). By seeking to dismiss

---

9. Made applicable to this proceeding by FED. R. BANKR. P. 7024 and 7025.

its § 727 claim, the plaintiff has not transferred its interest to another party; it has simply decided that it no longer wishes to pursue that interest. Furthermore, no particular party can claim that any interest has been transferred to it that it did not previously possess. In the *Joseph* case, the position of the party seeking substitution was that the original plaintiff was no longer adequately representing its interest. The court allowed substitution based on that argument. 121 B.R. at 683. But, inherent in that argument is that the party requesting substitution acquired no new interest during the pendency of the original action, but simply became concerned that its existing interest was no longer being served by the original plaintiff. The *Chalasani* court described that rationale for the use of Rule 25 under these circumstances as a "legal fiction too convoluted to be maintained." 92 F.3d at 1312. This Court agrees with that assessment.

█ Neither does the Court find direct authority for intervention or substitution in Rule 7041. That rule provides that a bankruptcy judge must carefully scrutinize any motion to dismiss a § 727 action and may require notice in addition to that mandated by the rule itself. It also permits the judge to dismiss such an action under appropriate terms and conditions. But the rule, by its express language, allows the Court to set terms and conditions only for the dismissal of the action. Where a new plaintiff is substituted, the litigation is not dismissed, but is allowed to continue. The Court finds no authority in Rule 7041 to set terms and conditions under which the litigation will continue.

█ Despite much loose terminology in many of the cases, this Court does not think that a plaintiff who brings an action under § 727 is truly a trustee for all of the other creditors in the case along with the fiduciary duties that the term implies. While such a creditor does choose to prosecute a cause of action that affects all other creditors with dischargeable debts, there is no statute that confers a fiduciary duty and there is unlikely to be any agreement among the creditors which establishes that creditor as a fiduciary for the other creditors. Even though a court must be mindful of the interest that other creditors have in a § 727 action, a court may not truly deal with the plaintiff as it would a full fledged trustee or fiduciary. It simply may not press a creditor into involuntary servitude by forcing it to forego a proposed monetary settlement and continue prosecution of an action it no longer wishes to pursue. Under Rule 7041, the Court may certainly refuse to permit dismissal or it may set appropriate conditions for dismissal. But the Court cannot compel an unwilling plaintiff to continue prosecution of the case.

█ The case law makes it clear that public policy concerns arise where the circumstances of a request for dismissal of a § 727 action create the appearance that the debtor is purchasing his discharge. Where a creditor moves to dismiss a § 727 action in return for a consideration paid only to that creditor, such *quid pro quo* is likely to contravene that public policy and the motion would probably be denied. But those public policy considerations are not present where the proposed dismissal is without consideration. Where (a) the motion to dismiss is adequately noticed out to parties in interest; (b) there are no objections to the motion; and (c) no consideration for the dismissal is proposed, a court would be hard-pressed to find grounds to deny the motion to dismiss. Even if an objection is filed alleging that the § 727 action is a strong one and should be continued, a court simply cannot force a plaintiff to continue in the prosecution of the action.

A very different situation is presented where the case has apparent merit and another party steps forward and makes a motion to substitute for the plaintiff who wants out. The Court does not believe that it is the intent of the Code and the Rules to leave serious allegations of wrongdoing untried where those allegations are of a character to justify a denial of discharge and where a party, albeit one different from the original plaintiff, is ready, willing and able to continue the case to an adjudicated conclusion.

Rule 7041 does not distinguish between cases where the plaintiff seeks to dismiss a § 727 action in exchange for a consideration and those cases where the plaintiff merely wishes to abandon its prosecution of a § 727 case. In either case, Rule 7041 demands heightened scrutiny by the courts. In those cases where the Court's examination reveals that the plaintiff wishes to abandon an apparently meritorious case without consideration, the focus of the public policy concern is not upon the impropriety of exchanging a discharge for a consideration. The focus is simply upon whether it is appropriate to grant a discharge under any circumstance to an individual who has apparently engaged in the kind of wrongful conduct which should act as a bar to the privilege of receiving a discharge of debt. While Congress has clearly expressed that policy in § 727(a)'s various subsections, neither the Code nor the Rules, in express terms, tell the courts how to respond to the dilemma which arises when a plaintiff wishes to abandon a meritorious § 727 action.

In apparent recognition of that policy dilemma, the courts almost universally al-low a qualified party to substitute in place of a plaintiff who wishes to abandon its § 727 case. At the same time, the rationale stated by those courts who allow such substitution has not been altogether consistent. In this Court's view, those courts have, in fact, simply used their equitable powers to carry out the express will of Congress in a circumstance where neither the Code nor the Rules prescribe a procedure for doing so.

■ Title 11 U.S.C. § 105 allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The express purpose of § 727 is to deny the discharge of debts to certain debtors under the circumstances specified in § 727(a). That purpose may be thwarted when, with or without consideration, the original plaintiff declines to continue with prosecution of a meritorious case. Where no party is willing to carry the litigation forward, that result may be unavoidable. However, where a qualified party volunteers to take over the plaintiff's case, substitution of that willing plaintiff for the original allows the express intent of § 727 to be realized. The Court believes that an order allowing replacement of such a willing substitute plaintiff for the original is necessary and appropriate to carry out the purposes of § 727(a). Because neither the Code nor the Rules specifically direct the Court to make such a substitution and, because the purpose of § 727 would be frustrated unless substitution is allowed, an order allowing substitution falls squarely within the Court's § 105 equitable powers.[10]

---

10. The powers of the bankruptcy courts under § 105 are strictly confined to carrying out the provisions of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). Section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law." *U.S. v. Sutton*, 786

Substitution under these circumstances is an equitable measure. Equitable considerations are, therefore, relevant to whether or not a court should allow such substitution in an individual case, as well as to appropriate conditions to be placed on such substitution. First and foremost among the equitable considerations is whether or not the allegations set forth in the original complaint have merit. Where the original plaintiff wishes to dismiss the case because information developed during discovery reveals that it is unlikely to prevail on the merits of the case, to allow substitution of a new plaintiff would work an injustice on the debtor. However, substitution would be appropriate where the court can find that a substituted plaintiff is likely to prevail on the merits of the allegations stated in the original complaint.

The purpose of substitution is to allow an adjudication on the merits of the original claim to take place where the original plaintiff is unwilling to continue prosecution of the case. But, it may not be appropriate where undue delay will result or where the defendant would be prejudiced in his ability to defend on the merits. Furthermore, substitution must not allow the substituted party to make an end run around the time limitations stated in § 4004. It would be unjust to allow substitution of a new plaintiff for the original and then to allow the new plaintiff to amend the complaint to state new causes of action; or even to substantially alter the deadlines in the pre-trial order in a way that allows the new plaintiff to materially improve its position over the position abandoned by the original plaintiff.

Granting such advantages to the substituted plaintiff would go beyond the Court's equitable powers to fashion orders that carry out the provisions of the Code. But, by limiting the substituted plaintiff to taking over the case in the posture that he finds it, for better or for worse, the Court insures that only those § 727 claims brought within the time constraints of Rule 4004 may be pursued. The defendant's due process rights require that a substituted plaintiff may assume no new rights and must be prohibited from raising new issues which were not raised in the original complaint.

### Peterson–Marone Construction, LLC., v. Jack Clifford McKissack, Jr.

The Court cannot approve the settlement of Peterson's adversary matter against McKissack. Just as in the *Stout* case, the only cause of action that Peterson brought against McKissack is the action for denial of discharge under § 727. It clearly presents a situation where a promise of payment to the objecting creditor is given in exchange for that creditor dismissing its objection to discharge. The parties have presented the Court with no countervailing considerations to mitigate the policy issues raised by such an exchange.

The proposed settlement does include some additional features, but they do not make the deal more palatable to the Court. McKissack has moved for dismissal of his bankruptcy case and has agreed that he will be prohibited from filing any new bankruptcy case for six months. Unfortunately, agreements to prospectively pro-

---

F.2d 1305, 1308 (5th Cir.1986). While § 105 does not empower the Court to address every possible injustice that may arise as a result of the administration of a case under the Bankruptcy Code, by its terms, it surely does allow the Court to enter an order that aids in carrying out the substantive provisions of other Code sections. In these cases, it is appropriate to fashion orders which allow the clear mandate of § 727(a) to be carried out so long as appropriate care is taken to avoid prejudice to the debtors.

hibit future filings are typically found to be unenforceable as a matter of public policy. *See, e.g., In re Cole,* 226 B.R. 647, 652 n. 6 (9th Cir. BAP 1998). Plus, a dismissal of the bankruptcy followed by refiling in six months would simply serve to remove obstacles to discharge in any future case by putting many of the actions complained of in Peterson's § 727 action beyond the one year time-frame referenced in that section. The provision in the proposed settlement which is ostensibly included to protect the interest of the remaining creditors would likely deprive them of rights in any future case.

■■■ The UST has moved to intervene in this case. The Court will deny that motion without prejudice. At this juncture, the Court has done nothing more than deny the parties' motion to dismiss. Peterson may choose to continue prosecution of its case. If so, the UST's inclusion as a party plaintiff would be inappropriate. The UST did, after all, allow the deadline for filing of an objection to discharge to pass without taking any action. If Peterson should decline to prosecute the matter further, then, upon a proper timely filed motion, the Court may consider substituting the UST in Peterson's place. Or, substitution may become moot if the parties should present the Court with a revised settlement that addresses the previously discussed issues that have led the Court to deny approval of the settlement now before the Court.

### BSB Leasing, Inc. v. Douglas Jude Stairs

■■■ The Stairs case involves dismissal of both a § 523 and a § 727 action. Where both sections are involved, parties frequently characterize their action as a settlement of the § 523 action and dismissal of the § 727 action without consideration. This case is somewhat different because the parties describe their action as the settlement of an underlying state court matter that essentially moots the issues raised in this Court.

Regardless of how matters are characterized by the parties, whenever consideration passes between a defendant debtor and a plaintiff creditor and the parties seek to dismiss a § 727 action, the issue is raised regarding the extent to which the consideration relates to the § 727 action. Where discovery has revealed that the § 727 action was ill founded, then the dismissal raises little concern. But where dismissal of a meritorious § 727 action is part of the consideration for settlement of other matters, then policy concerns are very much implicated. That determination may be relatively straight-forward where only a § 727 action is involved; but where multiple issues are settled at the same time, it may be less clear where the § 727 action fits into the settlement picture, if at all.

This particular case is complicated yet further, and is dealt the fatal blow, by the fact that the parties failed to seek relief from the automatic stay to pursue their actions in state court. Thus, by all appearances, a violation of the automatic stay has occurred which has rendered the parties' efforts in that forum void. *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir.1990) ("It is well established that any action taken in violation of the stay is void and without effect."). Equitable principles may sometimes apply to allow a court to validate an otherwise void action where the debtor did not give notice of the bankruptcy to the creditor and participated in the action. *In re Calder,* 907 F.2d 953, 956 (10th Cir.1990) (The debtor actively litigated the case after bankruptcy was filed without giving notice of bankruptcy case to the plaintiff until the court was ready to enter judgment.). However,

no such circumstance is apparent to the Court in this case.

While this is not an issue that has been presented to the Court by the parties for determination, it cannot be ignored. The Court will not engage in the futility of purporting to approve a settlement that, by all appearances, is a nullity and of no legal force or effect. The motion to approve the settlement in this case must be denied.

Furthermore, as a practical matter, the failure of the parties to seek leave of Court to pursue settlement of their differences in the state court litigation has prejudiced all of the parties involved. Under these particular circumstances, any order obtained by the Plaintiff in state court is void; the Defendant has paid money under a void agreement; and, because the UST and the case trustee had no prior notice of the parties' actions, those parties have had no opportunity to participate meaningfully in the settlement process. The Court doubts that it was the parties' intention to leave the case trustee and the UST out of the settlement process and, indeed, there is no requirement that they be involved in such negotiations. Yet the requirement in Rule 7041 that those parties be notified of any motion seeking to dismiss a § 727 action counsels strongly in favor of involving those parties on the front end rather than dealing with their objections at this late stage.

### General Considerations Relevant to Settlement and Dismissal of § 727 Actions

The results reached by the Court in these cases are just as unsatisfactory to it as they must be to the parties themselves. The Court believes that these results are compelled by the Code, the Rules, and the case law. At the same time, these types of cases would be easier for all concerned if the Code and Rules offered more guidance that the parties could use to craft settle-ments that are going to pass muster in the courts. To that end the Court will make a few observations.

It should be crystal clear to all concerned that the settlement of a § 727 action which calls for a payment to go *only* to the complaining creditor in return for dismissal of the adversary proceeding are highly disfavored and are unlikely to be approved. Such settlements create the appearance that a bankruptcy discharge is a commodity that is up for sale; and they fail to account for the interests of the estate and the remaining creditors in the § 727 action.

It should also be clear that the decision of a private creditor to add a § 727 action to a complaint which also states a cause of action under § 523 should be very carefully considered. Adding a § 727 action to such a complaint for the primary purpose of bringing some additional "leverage" is likely to complicate the creditor's life much more than it is worth because of the public interest and policy considerations which come into play on account of that § 727 action.

Another lesson that astute parties might take away from these cases is the wisdom of timely involving the UST and the case trustee in the settlement process. Those parties must receive notice of any proposed dismissal of a § 727 action. For the parties to reach an agreement only to find that it will not be acceptable to the UST or the case trustee means either negotiating a new deal or fighting over it in court. It must be more cost-effective to take those parties' views into account earlier rather than later in the process.

On the other hand, Rule 7041 clearly allows dismissal of § 727 actions with leave of court, with proper notice, and under appropriate terms and conditions. In the

real world, cases are settled and/or dismissed for a variety of reasons. A plaintiff may simply conclude that its case is too weak to prevail and may decline to waste further time and resources pursuing a losing case. And, in all areas of the law, parties seek to settle cases to avoid the vagaries of litigation and retain some control over their fates.

▪ The public policy concerns that are raised by any settlement or dismissal of a § 727 action require close scrutiny by the courts. The Court appreciates the fact that private parties frequently seek to settle or dismiss cases to mitigate risk and to serve their own interests. But, the public policy issues demand that the parties take the larger public interest into account, along with their private interests, when they seek to settle § 727 actions.

▪ Under many circumstances, dismissal of § 727 actions in conjunction with a settlement is in line with good practice and specifically allowed under rule 7041. No litmus test exists for approval of settlements involving dismissal of § 727 actions. Such settlements must be in the best interest of the estate and must balance the creditors' and the estate's interests with the public policy concerns implicated by § 727 actions. Some factors that this Court must look at in considering such motions to dismiss include:

1. *Nature of the wrongful behavior alleged in the complaint and the basis and support for those allegations.*

The more egregious the behavior alleged and the stronger the case, the greater the appearance that a Debtor is purchasing a discharge and the less likely a dismissal may be approved.

2. *Whether consideration for the dismissal is paid into the estate or only to the complaining creditor.* Because an action under § 727 affects the interests of all creditors, the Court must examine whether or not a proposed settlement and dismissal of the case is in the best interests of the estate.[11] The creditor who ignores the fact that it has filed an action which affects all of the creditors and parties in interest in the case, and seeks to settle the case on terms that benefit it alone, does so at its peril.

3. *Whether the amount of consideration going to the complaining creditor is greater than its expense in prosecuting the action.* Where the primary consideration for dismissal of a § 727 action is paid into the estate for the benefit of all creditors, and such settlement is in the best interest of the estate, this Court would not look with disfavor on the complaining creditor being made whole for its expenses incurred in prosecuting an action which ultimately benefits the estate. But the consideration going to the complain-

---

**11.** Strictly speaking, Rule 9019 is not applicable here because these cases do not deal with motions by trustees to compromise causes of action of the estate. Nonetheless, the factors developed in the Rule 9019 jurisprudence are highly relevant because the settlement of a § 727 cause of action, like the settlement of a cause of action brought by the estate, affects all of the case creditors. Those factors are (1) The probability of success on the merits in the litigation; (2) The difficulties, if any, to be encountered in collection of any judgment that might be obtained; (3) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (4) The paramount interests of creditors and the proper deference to their reasonable views in the premises; and (5) Whether the conclusion of the litigation promotes the integrity of the judicial system. *In re Kaiser Steel Corp.*, 105 B.R. 971, 976–77 (D.Colo. 1989).

ing creditor should be in line with its actual and reasonable expenses.

4. *Whether other parties have filed objections to the proposed settlement.* The Court must evaluate both the merits of the objection and whether the objector offers the Court an alternative to dismissal.

5. *Whether another qualified party in interest is willing to commit to taking over the litigation and pursuing it to judgment.* As noted above, when such substitution is allowed for equitable reasons to carry out the purposes of § 727, the substituted party will pick up the case where the parties left it at the time of the settlement.

6. *The degree to which the settling parties have sought the involvement of the UST and case trustee at an early stage of their settlement negotiations.* Rule 7041 specifically requires notice to these parties of proposed dismissals of § 727 actions. Those parties are well equipped to address the policy concerns which are expressed in Rule 7041 and the case law.

7. *Whether or not a § 523 action is being settled at the same time that a § 727 action is proposed to be dismissed.* The presence of a § 523 action alongside a § 727 action requires a determination of the extent to which any consideration paid in connection with the settlement is being paid on account of the § 727 action. In essence, the Court must separate the two settlements before it can assess their respective merits and the other factors enumerated above in connection with the § 727 action.

## CONCLUSION

The proposed settlement in the McKissack case represents the classic case of a payment being made to the complaining creditor in return for dismissal of an objection to discharge. The sole basis for the complaint filed against McKissack is an objection to discharge under § 727. The parties propose that McKissack will make a payment to Peterson in return for dismissal of the § 727 action. It also provides for dismissal of the bankruptcy case and a six month bar to future bankruptcy filing. But it provides no impediment to the discharge of McKissack's current debts in any future bankruptcy case. So, even though McKissack would not receive a discharge in the current case, he could receive one in the future with respect to his current debts. Plus, the six month bar to refiling could well work to the disadvantage of current creditors by putting transfers of property alleged in the current complaint beyond the time-frames specified in § 727 by the time a new case is filed.

The UST has made an application to intervene in the case. But the Court's denial of the proposed settlement does not remove Peterson from the case. So long as the original plaintiff remains in the case to pursue its complaint, a motion for intervention or substitution is premature and will be denied.

The Court will not approve dismissal of the § 727 action in the Stairs case because it is based upon settlement of a state court matter that was pursued by the parties without requesting or receiving relief from the automatic stay in this bankruptcy case. The consequence of taking an action in violation of the automatic stay is that such action is a legal nullity. The Court cannot engage in the futile act of dismissing the § 727 action based upon an agreement which has no legal force or effect. The

chapter 7 trustee's motion to intervene in this matter will also be denied as premature.

By separate order, the Court will set status and scheduling conferences in both cases approximately 30 to 45 days after the date of this Order. The Court does want to give the parties an opportunity to determine whether or not any basis for settlement remains in light of this discussion, and to consult with the U.S. Trustee and case trustees, before it sets deadlines for future activity in the two cases.

In accordance with the foregoing discussion, it is

**ORDERED** that in Case No. 04–1122, the parties' Stipulated Motion to Dismiss with Prejudice is DENIED without prejudice. It is further

**ORDERED** that in Case No. 04–1122, the United States Trustee's Motion to Intervene in Adversary Proceeding is DENIED without prejudice. It is further

**ORDERED** that in Case No. 03–1135, Plaintiff's Motion to Dismiss Adversary Proceeding is DENIED without prejudice. It is further

**ORDERED** that in Case No. 03–1135, the Chapter 7 Trustee's Motion for Leave to Intervene as Plaintiff is DENIED without prejudice.